# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-3262

_____

United States of America,

             Appellee,

v.

John T. Spurlock,

             Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*

_____

Submitted: January 10, 2007
Filed: July 30, 2007

_____

Before COLLOTON, BRIGHT, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following a bench trial, John T. Spurlock was convicted of seven counts of violating federal child exploitation statutes in connection with his attempt to entice two minors to engage in unlawful sexual activity. The district court[1] imposed concurrent sentences of 168 and 120 months' imprisonment. Spurlock appeals, and we affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

In January 2005, Spurlock entered an Internet chat room entitled "Daughters Who Love Daddies," and made contact with a person who identified herself as "Mary Roberts." "Mary" told Spurlock she had two young daughters, thirteen-year-old "Amber" and ten-year-old "Mandy." Unbeknownst to Spurlock, "Mary" was actually Detective Angie Wilson, an undercover agent with the FBI, and "Amber" and "Mandy" did not exist. Over the course of several Internet chats, Spurlock repeatedly expressed to "Mary" his desire to have sex with her and her daughters. During one online conversation, Detective Wilson, posing as "Mary," pretended to allow the girls to chat directly with Spurlock. Spurlock described various sex acts that he wanted to perform on the girls, and instructed them to perform sex acts on one another. Still believing he was talking to the girls, Spurlock exposed himself on his webcam and began masturbating.

In both online and telephone conversations with "Mary," Spurlock made plans to travel from his home in Texas to Kansas City, Missouri, to have sex with her daughters. On February 5, 2005, Spurlock arrived in Kansas City and telephoned "Mary" to inform her that he had purchased condoms and checked into a motel. FBI agents arrested Spurlock at the motel. Spurlock admitted that he had traveled to Kansas City for the purpose of having sex with "Amber" and "Mandy," whom he believed to be thirteen and ten years old.

A grand jury returned a seven-count indictment against Spurlock. Three counts charged him with attempting to entice a person below the age of eighteen to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). Two counts charged him with attempting to transfer obscene material to someone below the age of sixteen, in violation of 18 U.S.C. § 1470. One count charged him with travel in interstate commerce for the purpose of engaging in illicit sexual conduct, in violation of 18

U.S.C. § 2423(b). One count sought the forfeiture of property Spurlock used in commission of the crimes.

Spurlock moved to dismiss the indictment. He claimed that his conduct did not violate the statutes under which he was charged, because no actual minor was involved. The district court denied the motion. Spurlock then rejected the government's offer of a conditional guilty plea, and asserted his right to go to trial. During the bench trial, Spurlock moved twice for a judgment of acquittal, reasserting his claim that the statutes did not prohibit his conduct. Spurlock also argued for acquittal on the grounds that his conversations with "Mary" were not, by themselves, an attempt to entice her daughters to have sex. The district court denied Spurlock's motions and found him guilty on all counts.

At sentencing, in calculating Spurlock's offense level under the advisory sentencing guidelines, the court denied Spurlock's request for a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). The court sentenced Spurlock to 168 months' imprisonment on each of the enticement and interstate travel counts, and to 120 months' imprisonment on each of the attempt to transfer obscene material counts, all to be served concurrently. Spurlock appeals the denial of his motions for a judgment of acquittal. He also contends that the district court erred by denying him a downward adjustment for acceptance of responsibility, and that he is thus entitled to be resentenced based on a more favorable advisory guideline sentence.

II.

Spurlock's first argument for a judgment of acquittal is that the statutes under which he was convicted did not prohibit his conduct. He contends that because he conversed only with an undercover agent, and the statutes required that an actual minor must be involved, the government proved no violation of federal law. This argument is foreclosed by our decisions in *United States v. Helder*, 452 F.3d 751 (8th

Cir. 2006), and *United States v. Hicks*, 457 F.3d 838 (8th Cir. 2006).  In *Helder*, we concluded that an actual minor victim is not required for the crime of attempted enticement under § 2422(b).   452 F.3d at 756.  In *Hicks*, we extended that reasoning to § 2423(b)'s prohibition of travel with intent to engage in illicit sexual conduct.  457 F.3d at 841.  *Helder* and *Hicks* control here, and apply with equal force to the third statute under which Spurlock was convicted: attempt to knowingly transfer obscene matter to a minor under § 1470.  Spurlock's belief that the person to whom he transferred obscene matter was under the age of sixteen is sufficient to convict him of attempt, even if the recipient was actually an adult.  *See Helder*, 452 F.3d at 755.

Spurlock next challenges his conviction on Count One of the indictment. Count One alleges that independent of Spurlock's direct conversations with the girls, his conversations with "Mary" were by themselves an attempt to entice her daughters to engage in unlawful sexual activity, in violation of § 2422(b).  Spurlock argues that contact with an adult can never, by itself, be an attempt to entice a minor.  In Spurlock's view, the statute requires direct communication with a minor or a purported minor.  We disagree.

The elements of attempt are (1) intent to commit the predicate offense, and (2) conduct that is a substantial step toward its commission.  *United States v. Blue Bird*, 372 F.3d 989, 993 (8th Cir. 2004).  We conclude that Spurlock intended to entice minor girls to have sex with him, and that his conversations with their purported mother were a substantial step toward that end. *See United States v. Murrell*, 368 F.3d 1283, 1287-88 (11th Cir. 2004); *United States v. Hornaday*, 392 F.3d 1306, 1310 (11th Cir. 2004).  Spurlock described to "Mary" his desire to perform sex acts on her daughters, provided her with suggestions about sex acts he would like the girls to perform on him, and asked her to tell the girls about his wishes.  He relied on "Mary's" influence and control over her daughters, asking her to instruct the girls not to tell anyone what he planned to do to them.  He made plans with "Mary" to meet at a motel in Kansas City where he would have sex with her and her daughters.  He

admitted at trial that he "tried to persuade those two girls through their mother to engage in sexual acts[.]" (Tr. at 76).

Spurlock's conversations with "Mary" bear the familiar hallmarks of criminal attempt. They went beyond mere preparation; they were necessary to the consummation of the crime; and they strongly corroborate Spurlock's criminal intent to entice the girls. *See United States v. Jonsson*, 15 F.3d 759, 761 (8th Cir. 1994). We join the Eleventh Circuit in noting that "the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." *Murrell*, 368 F.3d at 1287. We do not believe the statute exempts sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents. Accordingly, we conclude that Spurlock attempted to entice "Amber" and "Mandy" through his conversations with their purported mother, and we reject his challenge to the conviction on Count One.[2]

Finally, we consider Spurlock's claim that the district court erred at sentencing by denying him a two-level reduction for acceptance of responsibility. Under USSG § 3E1.1(a), the burden is on a defendant to show that he "clearly demonstrate[d]" acceptance of responsibility. *See United States v. Thomas*, 93 F.3d 479, 489 (8th Cir. 1996). A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so

---

[2]Spurlock's claim that his contact with "Mary" did not constitute statutory rape or statutory sodomy under Missouri law is beside the point. Section 2422(b) prohibits an attempt knowingly to entice a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." Count One of the indictment alleges that Spurlock's conversations with "Mary" were an attempt to entice her daughters to engage in sexual activity with him, for which Spurlock could be charged with statutory rape and statutory sodomy under Missouri law. Therefore, Spurlock's actions fall within the scope of the federal statute.

clearly erroneous as to be without foundation. *United States v. Little Hawk*, 449 F.3d 837, 839 (8th Cir. 2006).

In certain "rare situations," a defendant may clearly demonstrate acceptance of responsibility despite his decision to go to trial. USSG § 3E1.1, comment. (n.2). "This may occur, for example, where a defendant goes to trial to assert or preserve issues that do not relate to factual guilt (*e.g.,* to make . . . a challenge to the applicability of a statute to his conduct)." *Id.* In such instances, a court should look primarily to a defendant's pre-trial statements and conduct to determine if he has accepted responsibility, *id.*, and the timeliness of a defendant's acceptance of responsibility is a relevant factor under 3E1.1(a). *Id.*, comment. (nn.1(h), 6). Of course, even a defendant who pleads guilty is not entitled to the downward adjustment as a matter of right, *id.*, comment. (n.3), so neither is a defendant who goes to trial to preserve issues that do not relate to factual guilt. Spurlock claims he went to trial only to advance a legal argument, and that the district court was required to find that his case exhibits one of the "rare situations" in which a defendant who is convicted at trial should receive the benefit of the adjustment. We disagree.

At the pretrial conference, Spurlock did not indicate that his defense at trial would be purely legal. He announced, rather, that he would rely on a defense of "general denial." (R. Doc. 42, at 3). Spurlock eventually stipulated to a few basic facts, mostly relating to the foundation for some prosecution exhibits, but he did not stipulate to the content of the more than sixty exhibits the government introduced at trial, or to the factual elements of guilt. After the government presented its case-in-chief, Spurlock took the stand and admitted to the factual allegations against him. (Tr. at 74-77).

The district court's finding that Spurlock did not clearly demonstrate acceptance of responsibility was not without foundation. At the pretrial conference, Spurlock had an opportunity to admit the factual elements of guilt and to narrow the case to purely

legal issues – i.e., whether the federal statutes under which he was charged require the involvement of an actual minor, and whether 18 U.S.C. § 2242(b) requires direct communication with a minor.  But through his general denial, Spurlock hedged his bet.  He "put[] the government to its burden of proof at trial by denying the essential factual elements of guilt," USSG § 3E1.1, comment. (n.2), and preserved his right to urge an acquittal based on any shortcomings or missteps in the presentation of the government's case.  *See United States v. Sumner*, 119 F.3d 658, 660 (8th Cir. 1997) ("[A] general denial defense . . . forces the government to prove every element of the crime charged.")

The district court found that Spurlock's actions resulted in "considerable effort and preparation on the part of the government and necessitated the government presenting its case at trial." (Tr. at 84).  Timeliness is a relevant factor in determining eligibility for a two-level reduction, both because untimely admissions may force the government and the court to expend resources unnecessarily, *see United States v. Kiel*, 454 F.3d 819, 824 (8th Cir. 2006); *United States v. Erhart*, 415 F.3d 965, 972 (8th Cir. 2005), and because the timeliness of a defendant's acceptance of responsibility is a measure of his true contrition and remorse for the criminal conduct.  *United States v. Sierra*, 188 F.3d 798, 804 (7th Cir. 1999); *United States v. Ewing*, 129 F.3d 430, 436 (7th Cir. 1997).  Spurlock's last-minute admissions, made *after* he waited to confirm that the government was able to prove the charged offenses in its case-in-chief, "had little effect on the quantum of evidence the government was required to present," *United States v. King*, 36 F.3d 728, 735 (8th Cir. 1994), and did not amount to persuasive showing of contrition and remorse.  *See also United States v. Abfalter*, 340 F.3d 646, 652 (8th Cir. 2003); *United States v. Field*, 110 F.3d 592, 594 (8th Cir. 1997) (upholding denial of acceptance-of-responsibility adjustment where defendant "went to trial contesting the factual elements of guilt" and made "no stipulations of guilty conduct . . . limiting the trial to a constitutional or statutory challenge").

Spurlock had an opportunity to proceed in a manner that could have qualified as a "rare situation" in which a defendant goes to trial and still earns an adjustment for acceptance of responsibility. But he bears the burden to demonstrate his entitlement to that benefit, and he failed to make an early demonstration of contrition, or to take the initiative to narrow the case to the straightforward legal issues that he now says were the only reason for a trial. We conclude that the district court did not clearly err when it denied an acceptance-of-responsibility reduction.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's affirmance of Spurlock's conviction. I dissent, however, from the majority's conclusion about Spurlock's acceptance of responsibility. The district court clearly erred when finding that Spurlock did not clearly demonstrate acceptance of responsibility.

The majority omits a crucial circumstance from its opinion. Contemporaneously with Spurlock's pre-trial proceedings, two other defendants faced virtually the same charges in the same district (but before a different judge) as Spurlock. See United States v. Helder, 452 F.3d 751 (8th Cir. 2006); United States v. Hicks, 457 F.3d 838 (8th Cir. 2006). Based on an argument that the statute under which they were charged, 18 U.S.C. § 2422(b), required the presence of an actual minor, rather than an adult pretending to be a minor, the district court granted those defendants' respective motions for judgment of acquittal after a jury trial, see Helder, 452 F.3d at 753, and dismissal of the indictment, see Hicks, 457 F.3d at 840. Spurlock's decision to proceed to trial was indisputably motivated by an attempt to

-8-

preserve for appeal the same legal argument that had worked for similar defendants in the same court.[3]

The Guidelines specifically anticipate circumstances in which a defendant might require or prefer a trial in order to preserve certain legal issues. Commentary Note 2 to U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 (2004) sets forth:

> a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily on pre-trial statements and conduct.

In this case, Spurlock exercised his right to trial to preserve a challenge to the applicability of 18 U.S.C. § 2242(b) to his conduct. Thus, the court should determine his acceptance of responsibility on his pre-trial statements and conduct.

The PSI report indicates that Spurlock's pretrial statements and conduct undoubtedly demonstrate his acceptance of responsibility. Following his arrest, Spurlock admitted the wrongfulness of his conduct and confessed to all relevant conduct. Spurlock also consented to the search of his computer and to officers' assuming his online presence for further investigation. Throughout his pre-trial proceedings, Spurlock conceded that he had engaged in the wrongful conduct, but maintained that the statute did not apply to his conduct. Spurlock, although requesting a trial, waived his right to a jury trial and stipulated to some of the government's evidence, including chain of custody of the computer files. At trial, he did not object

---

[3]Spurlock unsuccessfully argued the issue in his own case.

to the admission of the government's exhibits and only cross-examined one of three government witnesses.

True, Spurlock put the government to some burdens at trial by his general denial. But the applicable note explains that the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial . . ., is convicted, *and only then admits guilt and expresses remorse*." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.2 (2004) (emphasis added). Spurlock did not withhold admission of guilt until the government had met its burden of proof. He had previously admitted his conduct, stipulated to evidence, and conveyed an appreciation for the wrongfulness of his conduct. The acceptance of responsibility reduction cannot become solely a question of how much work the government was required to do; we must ultimately focus on whether the defendant himself exhibited responsibility and remorse for his conduct, which Spurlock did.

Spurlock faced the special and rare circumstances of seeing two other defendants avoid conviction on similar facts because of a statute's potential inapplicability. There is little question that Spurlock only went to trial to preserve that issue. Accordingly, I dissent from the majority in this respect and would have vacated Spurlock's sentence and remanded for re-sentencing with a reduction for acceptance of responsibility.

_____