BROWN, Circuit Judge,
dissenting in part:
The district court instructed a jury to convict Brandon Laureys of attempted enticement of a child if the Government proved Laureys tried to persuade an adult to grant him access to a minor. The district court also allowed the jury to convict Laureys of crossing state lines to engage in sexual conduct with a minor, absent any evidence Laureys expected the fictitious child to be present at his destination. Because the jury instruction was plainly erroneous and the evidence insufficient as a matter of law, I would reverse Laureys’s convictions and his twenty-year prison sentence.[1]
*38 I
Count One of the indictment charged Laureys with using the internet in an attempt to persuade a minor to engage in criminal sexual activity. The statute under which he was convicted provides,
Whoever, using ... any ... means of interstate ... commerce ... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in ... any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be ... imprisoned not less than 10 years or for life.
18 U.S.C. § 2422(b). Each verb of the statutory actus reus (“persuades, induces, entices, or coerces”) has a person as its object, and the statutory text leaves no doubt but that the personal object must be a minor.
The district court nevertheless instructed the jury to convict Laureys under § 2422(b) if he “intended to persuade an adult to cause a minor to engage in unlawful sexual activity.” Dist. Ct. Docket No. 52, at 15-16 (emphasis added). The district court emphasized that “[djirect communication with a child is unnecessary,” because “[t]he government must only prove that the defendant believed that he was communicating with someone who could arrange for the child to engage in unlawful sexual activity.” Id. at 15. These jury instructions thwart the plain meaning of § 2422(b) by replacing the statutory object (“any individual who has not attained the age of 18 years”) with its opposite (“an adult”).
On appeal, Laureys argues § 2422(b) requires intent to persuade a minor, Appellant’s Br. at 36, but he does not directly confront the erroneous jury instruction. Nor did he object to it in the district court. As the court explains, we do not ordinarily consider legal arguments that are forfeited in the district court and on appeal. Maj. Op. at 32-33. But this is not an ordinary case of forfeiture. Federal Rule of Criminal Procedure 52(b) provides, “[a] plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.” We invoke Rule 52(b), for example, “when the weakness of the evidence against defendant indicates that a serious injustice was done.” United States v. Rhodes, 886 F.2d 375, 379 (D.C.Cir.1989) (quoting United States v. Baker, 693 F.2d 183, 187 (D.C.Cir.1982)). Thus, “even though an issue was not raised either at trial or on appeal,” if it “is one which affects substantial rights and seriously affects the fairness of the judicial proceedings, then we should reverse [the defendant’s] conviction on our own motion.” Id. Under that standard, I would reverse Laureys’s conviction for enticement of a minor, as it was based on a plainly erroneous jury instruction. See United States v. Alston, 551 F.2d 315, 320 n. 23 (D.C.Cir.1976) (“Failure on the part of a trial court in a criminal case to instruct on all essential questions of law involved in the case, whether requested or not would clearly affect substantial rights within the meaning of Rule 52(b).” (quotation marks omitted)). That Laureys’s trial counsel shares responsibility with the Government for proposing an erroneous instruction does not mean we must close our eyes to the district court’s plain error. See United States v. Wiggins, 530 F.2d 1018, 1020 (D.C.Cir.1976) (noting that plain error review is appropriate even where the defendant’s trial counsel “specifically re *39 quested and approved” the challenged jury instruction).
The court does not attempt to defend the district court’s statement of the law on the merits, and there is no dispute that — if it is erroneous — the district court’s jury instruction was prejudicial.[2] The court disagrees only with my conclusion that any error was plain. Maj. Op. at 33.
It is an open question in this circuit whether § 2422(b) permits a conviction for persuasion of an adult. I say it is an open question only in the sense that we have never addressed it; the plain meaning of the statute leaves no room for doubt about the answer. Section 2422(b) is unambiguously directed at persuasion of a minor. Under these circumstances, the lack of controlling precedent does not save the jury instruction from plain error. “Even absent binding case law, ... an error can be plain if it violates an absolutely clear legal norm, for example, because of the clarity of a statutory provision.” In re Sealed Case, 573 F.3d 844, 851 (D.C.Cir.2009) (quotation marks omitted); see also United States v. Burroughs, 613 F.3d 233, 244 (D.C.Cir.2010) (“The lack of case law squarely on point does ‘militate against’ finding plain error, but it is not dispositive.” (citation and quotation marks omitted)).
The court cites out-of-circuit precedent in an effort to prove any error in the district court’s instruction was not plain. I am not persuaded. Only one circuit court has ever held § 2422(b) criminalizes the attempt to persuade an adult to cause a child to engage in sexual conduct. See United States v. Murrell, 368 F.3d 1283, 1287 (11th Cir.2004). That precedent is on weak footing. The Murrell panel mistakenly assumed § 2422(b) penalizes any attempt to solicit sex with a minor. See id. at 1287. A subsequent panel of the same court hinted Murrell’s analysis was based on a misreading of the statute. United States v. Lee, 603 F.3d 904, 916 (11th Cir.2010). Returning to the statute’s plain meaning, the Lee panel held that “the government must prove that the defendant intended to cause assent on the part of the minor.” Id. at 914; accord United States v. Lanzon, 639 F.3d 1293, 1299 (11th Cir.2011). Without explicitly overturning Murrell, Lee charitably construed “[t]he holding of Murrell ” to be “that a reasonable jury could have found that Murrell attempted to ‘induce’ a minor to engage in sexual activity with him because he ‘attempted to stimulate or cause the minor to engage in sexual activity with him.’ ” Lee, 603 F.3d at 916 (quoting Murrell, 368 F.3d at 1287).
The other courts that have affirmed convictions under § 2422(b) based on a defendant’s communication with an adult have followed the reasoning of Lee, not Murrell. That is, they have required proof the defendant attempted to cause assent on the part of a minor, not the adult intermediary. In each of these cases, the defendant’s communication with an adult was *40 either a vehicle through which the defendant attempted to obtain the child’s assent,[3] or a substantial step toward persuasive communication with the child herself.[4] Laureys’s case does not require us to decide whether these courts were right to hold the requisite attempt to persuade a minor may be proven exclusively by communication with an adult. All of these courts agree § 2422(b) requires an attempt to bend the child-victim’s will. They offer no support therefore to the district court’s jury instruction, which permitted a conviction for persuading an adult, absent any effort to win the child’s assent. Only the discredited Murrell opinion took the view that attempting to persuade an adult to cause a child to engage in sexual conduct, without more, satisfies the elements of § 2422(b).
More to the point, the errors of other courts do not immunize the district court’s jury instruction on plain error review.
[W]e have recognized that a division of authority on a given point may provide cause to question the plainness of an error, but we did so in cases lacking the kind of clear statutory language at issue here. Moreover, [this court has] not hesitated to deem an error involving clear language plain, even when another circuit considered the provision ambiguous enough to defeat a finding of plain error.
In re Sealed Case, 573 F.3d 844, 851-52 (D.C.Cir.2009) (citations omitted). In In re Sealed Case, we explicitly rejected “the government’s view [that] [a] circuit split on [the relevant] issue necessarily means that the error could not have been plain.” Id. at 851. We found plain error in the district court’s treatment of rehabilitation as justifying a longer prison term despite precedent from the Eighth and Ninth Circuits supporting the district court’s decision. See id. at 848-51. Here, as in In re Sealed Case, the relevant statute “speaks with absolute clarity” on the subject of the district court’s decision, id. at 851, so the contrary view of one out-of-circuit case does not save the jury instruction from plain error.
In Murrell, the Eleventh Circuit held that “[b]y negotiating with the purported father of a minor, [the defendant] attempted to stimulate or cause the minor to engage in sexual activity with him” and therefore his “conduct fits squarely within the definition of ‘induce.’ ” 368 F.3d at 1287. The Eleventh Circuit noted that “induce” could mean either “ ‘to lead or move by influence or persuasion; to prevail upon,’ or alternatively, ‘to stimulate *41 the occurrence of; cause.’ ” Id. (citing American Heritage Dictionary of the English Language 671 (1981)). The Murrell panel decided Congress must have intended the second definition, because the first was “essentially synonymous with the word ‘persuade’” and would make that word in the statute superfluous. Id. On this view, the Government need not prove the defendant tried to win a child’s assent; an attempt to persuade the child’s guardian will suffice. See id.
As the district court correctly observed, “there is no equivalent of Murrell in this circuit.” Tr. 5/26/2010, at 286. Despite its concern about “[t]he way [§ 2422(b)’s] language has to be parsed and chopped and sliced and diced in order to make everything fit,” id., the district court allowed Laureys to be convicted under Murrell’s plainly erroneous interpretation. We should reject Murrell’s flawed reading of § 2422(b) for four reasons.
First, the second definition of “induce” (“to stimulate the occurrence of; cause”) is incompatible with that word’s statutory context. In § 2422(b), the verb “induce” has a person as its object — “any individual who has not attained the age of 18 years.” 18 U.S.C. § 2422(b). But “induce” only means “cause” when its object is inanimate. See Oxford English Dictionary Online, “induce,” def. 4(a) (listing examples), http://www.oed.com/view/Entry/94758 (last visited August 9, 2011). For example, one can induce a chemical reaction or induce labor without bringing about a person’s assent. By contrast, when “induce” is used with a personal object, it has the first meaning. See id. def. 1 (“To lead (a person), by persuasion or some influence or motive that acts upon the will, to (into, unto) some action, condition, belief, etc.; to lead on, move, influence, prevail upon (any one) to do something.”). For example, one does not induce a person to donate to a charity by forcibly seizing her money, but by convincing her that it is the right thing to do.
Second, the word “induce,” in its first definition, is not “essentially synonymous with the word ‘persuade,’ ” as the Murrell court said it was. 368 F.3d at 1287. The word “persuade” suggests the use of reason, but the word “induce,” though it can bear that meaning, may signify any force, such as trickery, that acts upon the will. For example, one may induce a person to donate to one charity by convincing her that she is donating to another. Moreover, Congress often uses multiple words with overlapping meaning to capture a broad swath of conduct. That the most sensible definition of “induce” overlaps with “persuade” and “coerce” does not render it superfluous. Cf. Moskal v. United States, 498 U.S. 103, 120-21, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (Scalia, J„ dissenting) (“Since iteration is obviously afoot in the relevant passage, there is no justification for extruding an unnatural meaning out of ‘falsely made’ simply in order to avoid iteration. The entire phrase ‘falsely made, forged, altered, or counterfeited’ is self-evidently not a listing of differing and precisely calibrated terms, but a collection of near synonyms which describes the product of the general crime of forgery.”).
Third, the statutory history of § 2422(b) confirms that “induce” does not mean simply “cause,” but involves an act directed at bending the will of another person — here, a minor. The modern enticement statute traces its origin to the Mann Act of 1910, which used “induce” and “cause” in the same sentence.
[A]ny person who shall knowingly persuade, induce, entice, or coerce any woman or girl under the age of eighteen years from any State ... to any other State ..., with the purpose and intent to induce or coerce her ... to engage in *42 prostitution or debauchery, or any other immoral practice, and shall in furtherance of such purpose knowingly induce or cause her to go and to be carried or transported as a passenger in interstate commerce ... shall be deemed guilty of a felony....
White Slave Traffic (Mann) Act, ch. 395, § 4, 36 Stat. 825, 826 (1910) (emphasis added). If “induce” meant the same thing as “cause,” then Congress would not have used these words in the alternative in the phrase “induce or cause.” That phrase suggests that when “induce” is used elsewhere in the statute, it does not simply mean “cause,” but instead has in common with “persuade,” “entice,” and “coerce” an element of mental force. See Cal. Indep. Sys. Operator Corp. v. FERC, 372 F.3d 395, 400 (D.C.Cir.2004) (“The canon of statutory construction noscitur a sociis, i.e., a word is known by the company it keeps[,] is often wisely applied where a word is capable of many meanings in order to avoid giving unintended breadth to the Acts of Congress.” (quotation marks omitted)); see, e.g., Valdes v. United States, 475 F.3d 1319, 1323-24 (D.C.Cir.2007) (applying the canon to one statutory term in a series of six related words).
Finally, the Murrell court reasoned that the “efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective.” 368 F.3d at 1287. Not so. Congress very well could have decided that child victims are more vulnerable to online persuasion, inducement, enticement, and coercion than their adult guardians. The most sensible interpretation of subsection (b) is that Congress targeted the enticement of minors for that very reason. Congress has already provided a penalty for soliciting a child under age sixteen for sex crimes. See 18 U.S.C. § 2425. And other provisions penalize transporting “any individual” for sex crimes, id. § 2421, persuading “any individual” to travel for sex crimes, id. § 2422(a), transporting a minor for sex crimes, id. at § 2423(a), arranging such transportation, id. § 2423(d), traveling with the intent to engage in illicit sexual conduct, id. § 2423(b), engaging in the illicit sex act itself, id. §§ 2241-14, 2423(c), and attempting or conspiring to do so, id. at 2423(e). Clearly, Congress has not left prosecutors powerless against child predators who do not entice their victims on the internet. Section 2422(b) is unique in targeting efforts to overbear the wills of children online. We have every reason to presume Congress meant what it said. Congress has not been reticent to amend § 2422(b), and each successive amendment has made the statute more punitive. See United States v. Dwinells, 508 F.3d 63, 69 (1st Cir.2007).[5] If Congress wishes to expand § 2422(b) to penalize persuading an adult to grant sexual access to a child, Congress does not need our help rewriting the statute.
II
Count Two of the indictment charged Laureys with driving from Maryland to *43 the District of Columbia “for the purpose of engaging in ... illicit sexual conduct,” 18 U.S.C. § 2423(b); namely, a sex act •with a minor. Before denying Laureys’s motion for a judgment of acquittal, Judge Robertson commented with admirable forthrightness on the weakness of the Government’s case:
As for the interstate travel with intent count, ... if I were a juror, I would probably find a reasonable doubt as to whether the defendant thought there was going to be a girl in that apartment or not.... But I think it’s a jury question, and I’m just making this record of my own concern about this statute and its razor thin application to the facts of this case in case the jury convicts and another court wants to look at it.
Tr. 5/26/2010, at 287. Because Laureys moved for a judgment of acquittal, the district court’s hesitant finding about the sufficiency of the evidence is entitled to no deference. Reviewing de novo, and viewing the evidence in the light most favorable to the government, I would reverse Laureys’s conviction.
“The crime of attempt ... consists of (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which ... goes beyond mere preparation.” United States v. Washington, 106 F.3d 983, 1005 (D.C.Cir.1997) (quoting 2 Wayne R. La-Fave & Austin W. Scott, Jr., Substantive Criminal Law 18 (1986)). Assuming that Laureys believed the girl existed, that Laureys believed Jim would allow him to engage in sexual conduct with her, and that Laureys intended to do so at his earliest opportunity, the Government still failed to show Laureys took a substantial step toward the commission of that crime.
A substantial step is one that manifests “a true commitment toward completing the crime” and “demonstrat[es] that the crime will take place unless interrupted by independent circumstances.” United States v. Hofus, 598 F.3d 1171, 1174 (9th Cir.2010) (quotation marks omitted); see also United States v. Ramirez, 348 F.3d 1175, 1180 (10th Cir.2003) (“A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant’s criminal intent and must unequivocally mark the defendant’s acts as criminal.”) (quoting United States v. Smith, 264 F.3d 1012, 1016 (10th Cir.2001)); United States v. Bailey, 228 F.3d 637, 640 (6th Cir.2000) (“It must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.”) (quoting United States v. Manley, 632 F.2d 978, 987-88 (2d Cir.1980)). As the district court put it to the jury, a substantial step is part of a “course of conduct planned to culminate in the commission of the crime.” Dist. Ct. Docket No. 52, at 16; accord United States v. Resendiz-Ponce, 549 U.S. 102, 107, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007); United States v. Duran, 96 F.3d 1495, 1508 (D.C.Cir.1996).
“Important to a substantial-step assessment is an understanding of the underlying conduct proscribed by the crime being attempted.” United States v. Farhane, 634 F.3d 127, 148 (2d Cir.2011). Here, the underlying conduct is interstate travel for the purpose of sexual conduct with a minor. Driving to the address Jim provided would be a substantial step toward the commission of that conduct only if Laureys intended that drive to culminate in sex with a minor.
*44 If § 2423(b) proscribed interstate travel with the mere abstract intent to engage in sexual activity with a minor at some undetermined point in the future, this would be a more difficult case.... By requiring that the interstate travel be ‘for the purpose of engaging in illicit sexual activity, Congress has narrowed the scope of the law to exclude mere preparation, thought or fantasy; the statute only applies when the travel is a necessary step in the commission of a crime.
United States v. Tykarsky, 446 F.3d 458, 471 (3d Cir.2006).
The evidence is insufficient as a matter of law, because it cannot possibly prove Laureys intended to have sex with anyone but Jim during the relevant trip. Even if Laureys entertained some hope that he might have sex with a child in the future, his drive to meet with Jim was at best “mere preparation” for a future crime. See United States v. Bolden, 514 F.2d 1301, 1307 n. 10 (D.C.Cir.1975) (“ ‘[CJasing’ [a] store preparatory to a later attempt to rob” would be “mere preparation” for the robbery, not “an indictable attempt.”).
There is no evidence whatsoever that Laureys was driving to the District to have sex with a child. Detective Palchak admitted there was “no implication anywhere that the girl [was] going to be at this setup meeting” at Jim’s place. Tr. 5/25/2010, at 215. Jim said only that his girlfriend “comes over a lot” and that he had been “messing around” with her nine-year-old daughter. Indeed, the chat was remarkably silent about Jim’s ability and intent to procure the victim. Laureys was focused instead on arranging a meeting between him and Jim. Unlike Laureys’s very practical arrangements to meet Jim, his lewd statements about the fictitious girl were never more than hypothetical. Merely proposing illegal sexual conduct at some unspecified point in the future is not a substantial step toward its commission. See United States v. Gladish, 536 F.3d 646, 649-50 (7th Cir.2008). After planning their meeting at Jim’s apartment, and for the last ten minutes of the chat, neither he nor Laureys ever mentioned the fictitious girl again. Instead, Laureys asked Jim, “you got anything fun we could watch or something while we’re there[?]” Detective Palchak admitted Laureys did not bring up the girl during their phone calls. See Tr. 5/25/2010, at 175-76, 223.
The most likely interpretation of this evidence is that Laureys assumed the girl — if she even existed — would not be present at this meeting. Laureys’s assumption was reasonable, since Detective Palchak’s statements as “Jim” were consistent with a sexual liaison between two men, not a prelude to child molestation. He invited Laureys to “get a beer first to make sure we are comfortable then have fun at my [place].” And he described himself physically: “I’m a white dude about 6 foot 190[¶] 38[¶] you[?]” Any reasonable juror would have entertained grave doubts about Laureys’s intent to engage in sexual conduct with a real child upon his arrival in the District.
Ill
This is a disturbing case. Laureys’s chat with Detective Palchak and his testimony at trial demonstrate moral depravity, but they do not meet the Government’s burden to prove the requisite criminal intent. I would reverse Laureys’s convictions. Therefore, I respectfully dissent.

. Although I would not reach Laureys's ineffective assistance claim or his challenges to the conditions of supervised release, Judge Henderson’s partial dissent means my vote is necessary to decide the ineffective assistance claim. Because I agree with the lead opinion’s statement of the law on that point, I join that portion of the opinion to break the tie and remand for an evidentiary hearing on Laureys's ineffective assistance claim. See generally David Post & Steven C. Salop, Rowing Against Tidewater: A Theory of Voting by Multijudge Panels, 80 Geo. L.J. 743, 745 (1992) (arguing issue-by-issue voting is more consistent than outcome voting "with an appellate court’s role of providing guidance to *38 lower courts and the community as a whole as to the legal consequences of specific ac-lions”).

. Had the jury been correctly instructed, it could not reasonably have found Laureys guilty under § 2242(b). Even if Laureys intended at some point in the future to entice the fictitious child herself, there is no evidence Laureys intended to use a facility of interstate commerce to do so. Cf. United States v. Spurlock, 495 F.3d 1011, 1014 (8th Cir.2007) (“We conclude that Spurlock intended to entice minor girls to have sex with him, and that his conversations with their purported mother were a substantial step toward that end.”); id. at 1012 ("Detective Wilson, posing as [their mother,] pretended to allow the girls to chat directly with Spur-lock.”). And there is no evidence Laureys attempted to entice the fictitious girl through his online communication with “Jim.” Cf. id. at 1014 ("[Spurlock] admitted at trial that he 'tried to persuade those two girls through their mother to engage in sexual acts.' ”).

. See United States v. Berk, 652 F.3d 132, 140 (1st Cir.2011) ("Section 2422(b) criminalizes an intentional attempt to achieve a mental state — a minor's assent.... The trial court could easily have found that the explicit communications with a person whom Berk thought was the father of a 12-year old girl about 'renting her out,’ along with the concomitant request to see what the girl thought of the idea, were part of an attempt to achieve the requisite mental state in the minor.”); United States v. Douglas, 626 F.3d 161, 164 (2d Cir.2010) ("[T]he statute criminalizes obtaining or attempting to obtain a minor’s assent to unlawful sexual activity. Such assent might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity.” (citation omitted)); Spurlock, 495 F.3d at 1014; see also United States v. Nestor, 574 F.3d 159, 162 n. 4 (3d Cir.2009) (suggesting in dicta that criminal persuasion may not require direct communication with a minor because "[s]exual predators can and do ... attempt to persuade children to engage in sexual activity through the victim's parents or guardians”).

. See United States v. Nestor, 574 F.3d 159, 162 (3d Cir.2009) ("He took substantial steps calculated to put him into direct contact with a child so that he could carry out his clear intent to persuade, induce, entice, or coerce the child to engage in sexual activity.”); Spurlock, 495 F.3d at 1014.

. See Telecommunications Act of 1996, Pub.L. No. 104-104, § 508, 110 Stat. 56, 137 (adding subsection (b) to § 2422 and establishing a maximum imprisonment term of ten years); Protection of Children from Sexual Predators Act of 1998, Pub.L. No. 105-314, § 102, 112 Stat. 2974, 2975-76 (increasing the maximum term to fifteen years); Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub.L. No. 108-21, § 103(a)(2)(B) & (b)(2)(A), 117 Stat. 650, 652, 653 (2003) (increasing the maximum term to thirty years and adding a five-year mandatory minimum); Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, § 203, 120 Stat. 587, 613 (increasing the maximum term to life and increasing the mandatory minimum to ten years).