# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2195
_____

United States of America

*Plaintiff - Appellee*

v.

Sara Tivisay Rivero

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 13, 2023
Filed: April 5, 2023
[Unpublished]
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Sara Tivisay Rivero pled guilty to one count of making a false statement during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and the district court[1] sentenced her to 20 months' imprisonment followed

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

by 3 years of supervised release. Rivero appeals, alleging that the district court committed procedural error when it (1) improperly calculated the Guidelines range, (2) relied on unproven facts in sentencing her, and (3) denied her a reduction for acceptance of responsibility. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began investigating Rivero and her then boyfriend, Terrance Redwine Jr., after several firearms that she and Redwine purchased were recovered in the hands of prohibited persons. See 18 U.S.C. § 922(g). The investigation revealed that Rivero and Redwine lived together and had purchased a large number of firearms. The paperwork submitted in connection with the purchases, ATF Form 4473, revealed that the couple repeatedly purchased multiple of the same type of gun at a time—a hallmark of "straw purchasing." See United States v. Parker, 871 F.3d 590, 595 (8th Cir. 2017) (defining a straw purchaser as a person who can "pass the requisite background checks, to obtain guns legally" on behalf of someone who cannot). For example, in one five-month period, Rivero purchased five identical Taurus nine-millimeter pistols, three of which law enforcement later found in the possession of prohibited persons.

In September 2020, law enforcement executed a search warrant at Redwine and Rivero's residence. A search of the residence revealed a loaded pistol and a loaded Anderson Manufacturing, Model AM-15, multi-caliber rifle under the couch cushions, more than 60 grams of marijuana, and assorted .45 caliber ammunition. Rivero also provided the officers with receipts documenting her firearms purchases.

In a post-Miranda[2] interview, Rivero told law enforcement officers that she no longer possessed any of the guns she had purchased, as she had sold them all on Facebook Marketplace. She denied selling guns to any of the individuals from whom her guns were recovered, and she explained that before selling any firearm,

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

she always required the buyer to show her a valid Iowa firearms permit. She initially told officers that the rifle found in her couch was manufactured from parts that she owned, but later investigation revealed that the serial number on the rifle's receiver did not match any of those that Rivero had purchased. Rivero nonetheless admitted that she bought lower receivers for similar rifles knowing that Redwine intended to build with them. Finally, investigators obtained federal search warrants for Redwine's and Rivero's urine to test for controlled substances. Both tests revealed the presence of marijuana.

Following the investigation, Rivero and Redwine were indicted with a combined 13 counts related to their firearms purchases. Ultimately, Rivero pled guilty to Count 4, which alleged that she had violated 18 U.S.C. §§ 922(a)(6) and 924(a)(2) when she provided a false address on ATF Form 4473 in connection with her purchase of one of the Taurus nine-millimeter pistols. At the end of the plea hearing, the district court ordered the United States Probation Office to complete a Presentence Investigation Report (PSR).

Rivero filed a plethora of written objections to the PSR. First, she lodged a blanket objection to the Offense Conduct Section (OCS) of the PSR, denying transferring a firearm to any prohibited persons (other than Redwine) identified in the OCS. The Probation Office responded to this objection by stating, "the OCS does not assert that the defendant transferred any of the purchased firearms to [any of the prohibited persons] identified in the OCS." She then asserted more specific objections to approximately 40 paragraphs in the OCS, especially those discussing Redwine's purchases of firearms, arguing that they did not constitute "relevant conduct." Finally, she made several legal objections, including to the calculation of her base offense level and the application of certain enhancements and reductions.

At Rivero's sentencing hearing, the district court warned her at the outset, stating:

If you persist in claiming that you didn't do anything wrong and I find that you have falsely denied relevant conduct, you risk losing acceptance of responsibility.

Frankly, I'm worried about you. I think you have taken a position up to now that isn't consistent with the evidence I've seen. And, again, I'll hear final arguments, but I'm concerned that if you start down this path of contesting everything that you're going to end up hurting yourself far more than if you would just truthfully admit what happened and we could talk about what a fair resolution of this case is for you.

. . .

I want to give you a couple minutes to talk with your lawyer about that before we start talking about your objection to nearly every paragraph of the [PSR] that matters.

R. Doc. 140, at 5-6.

The district court then proceeded to rule on Rivero's objections. Beginning with her objections to the OCS, the district court found that Rivero "doesn't dispute the accuracy of the information that's in those paragraphs. She argues those facts just don't constitute relevant conduct." R. Doc. 140, at 8. The district court then overruled Rivero's objections, determining that the conduct was relevant, and then found "by a preponderance of the evidence, that [Rivero] and [Redwine] were operating in concert over a period of years to unlawfully purchase, possess, manufacture from receivers, and to distribute numerous firearms." R. Doc. 140, at 9.

Subsequently, the district court addressed Rivero's objection to the calculation of her base offense level. Specifically, Rivero argued that a base offense level of 20 under United States Sentencing Guidelines (USSG) § 2K2.1(a)(4)(B) was improper because she did not "purchase a semiautomatic firearm capable of accepting a large capacity magazine. Nor did she commit the offense with knowledge, intent, or reason to believe the firearm would be transferred to a

-4-

prohibited person." The district court found this argument disingenuous, as Rivero admitted to purchasing lower receivers for semiautomatic firearms and giving them to Redwine, a prohibited person, knowing that he intended to and did construct AR-15s with them. Ultimately, the district court found the base level appropriate, stating:

> [T]here's a preponderance of the evidence here that the defendant purchased receivers that were converted into AR-15s, that those AR-15s had the capacity of accepting high-capacity magazines, that that happened during a period of time when [Rivero] and Mr. Redwine were both prohibited to possess guns because of their marijuana use, so I do think a base level of 20 is applicable here under 2K2.1(a)(4)(B).

R. Doc. 140, at 15.

Moving next to Rivero's request for a reduction for acceptance of responsibility, the district court found that some of Rivero's "objections [we]re technical legal objections that I don't hold in any way against Ms. Rivero. But I also think we have, as [the government] has pointed out, a number of factual objections that are Ms. Rivero's responsibility." R. Doc. 140, at 19. It determined that Rivero's denial of any knowledge regarding the firearms discovered in her home was not credible, and "this kind of continuous minimization of what she did wrong is a problem for me." Ultimately, the district court declined to grant Rivero a reduction for acceptance of responsibility because "I don't think [Rivero] has shown by a preponderance of the evidence her entitlement to acceptance of responsibility. That's a burden she carries here. I do think she's disputing material facts." R. Doc. 140, at 21.

Finally, moving to the 18 U.S.C. § 3553(a) analysis, the district court determined that a sentence of imprisonment was warranted in this case, finding that:

[T]hese firearms end[ed] up in the hands of very, very dangerous people, I think through either intent or just absolute abject neglect of any responsibility. Willful blindness, deliberate ignorance, call it what you want, but it's basically transferring guns to people with no regard to whether or not they should have or are legally allowed to have guns.

And as a result, you know, a number of those guns ended up being used, kind of not surprisingly, in shootings and homicides and other very serious criminal activity. That's very dangerous behavior and worthy of lengthy terms of imprisonment.

R. Doc. 140, at 41. The district court weighed the severity of the underlying conduct against Rivero's mitigating circumstances and ultimately decided to sentence Rivero to only 20 months' imprisonment, a downward variance from a Guidelines range of 57 to 71 months' imprisonment.

Rivero now appeals this sentence, alleging that the district court committed procedural error when it (1) improperly calculated the Guidelines range, (2) relied on unproven facts in sentencing her, and (3) denied her a reduction for acceptance of responsibility. Had the district court not committed such errors, Rivero argues, her sentence would have been even shorter.

## II.

"'Procedural error' includes 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted). "To the extent an asserted procedural error involves interpretation of the guidelines, we review the district court's construction and application of the sentencing guidelines *de novo*." United States v. Heath, 624 F.3d 884, 886 (8th Cir. 2010). "We review factual findings at sentencing for clear error." United States v. Norwood, 774 F.3d 476, 479 (8th Cir. 2014) (per curiam).

## A.

First, although Rivero does not raise the challenge in her opening brief, Rivero takes issue in her reply brief with the district court's calculation of the Guidelines range. Specifically, she argues that the district court erred in ruling that USSG § 2K2.1(a)(4)(B) applied to her base-offense level because she transferred lower receivers for semiautomatic firearms to Redwine, a prohibited person. "Claims not raised in an opening brief are deemed waived." Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008). But even if this claim was not waived, we hold that the district court did not err.

USSG § 2K2.1(a)(4)(B) provides in pertinent part that a base offense level of 20 applies if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine," the defendant "is convicted under 18 U.S.C. § 922(a)(6)," and the defendant "committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." Here, Rivero admitted to purchasing several lower receivers for semiautomatic firearms capable of accepting large capacity magazines and giving them to Redwine, a prohibited person, knowing that he intended to convert them into operational AR-15s. See USSG § 2K2.1, comment (n.1) (defining "firearm" with the definition in 18 U.S.C. § 921(a)(3), which includes the "frame or receiver" of any weapon "which will or is designed to or may readily be converted to expel a projectile by the action of an explosive"). Indeed, the district court found "that the defendant purchased receivers that were converted into AR-15s, that those AR-15s had the capacity of accepting high-capacity magazines, that that happened during a period of time when [Rivero] and Mr. Redwine were both prohibited to possess guns because of their marijuana use." R. Doc. 140, at 15. Further, the district court determined that Rivero's claim that she was unaware of the AR-15 in her couch was not credible. As a result, the district court did not err in finding that Rivero knowingly transferred a semiautomatic firearm capable of accepting a large-capacity magazine to a prohibited person and, accordingly, in applying a base offense level of 20.

B.

We next address Rivero's argument that the district court relied on unproven facts in sentencing her. The PSR itself is not evidence. United States v. Poor Bear, 359 F.3d 1038, 1041 (8th Cir. 2004). Nonetheless, the district court may accept as true all facts to which the defendant does not object and may rely on such facts when sentencing the defendant. United States v. Pepper, 747 F.3d 520, 523 (8th Cir. 2014). When a "defendant objects to any of the factual allegations contained therein on an issue on which the government has the burden of proof, such as the base offense level and any enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts" by a preponderance of the evidence. Poor Bear, 359 F.3d at 1041. If the defendant objects to certain factual allegations, the government subsequently fails to carry its burden of proof, and "the district court sentences the defendant based on the allegations of uncharged conduct set forth in the PSR," then "that sentence is in error, and we must vacate the sentence and remand for resentencing." United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006).

However, the defendant "must object to the facts contained in the PSR 'with specificity and clarity' so as 'to put the [g]overnment on notice of the challenged facts.'" Pepper, 747 F.3d at 523 (citation omitted). Indeed, "the [g]overnment's obligation to present evidence in support of a PSR's factual statements only arises for the facts the defendant disputes." United States v. Flores, 9 F.3d 54, 56 (8th Cir. 1993) (citation omitted).

Here, as the district court stated, Rivero did not "dispute the accuracy of the information that's in [the OCS of the PSR]. She argue[d] those facts just don't constitute relevant conduct." R. Doc. 140, at 8. At sentencing, the district court overruled Rivero's relevancy arguments, and Rivero does not challenge that ruling on appeal. Therefore, because Rivero did not object to the *factual accuracy* of the facts stated in the PSR, the district court was entitled to rely on them in sentencing, even without proof of those facts from the government. Cf. Pepper, 747 F.3d at 524

-8-

(holding that district court could rely on facts contained in PSR when "[defendant's] objections d[id] not contest the veracity of the facts contained in the PSR but instead merely observe[d] that [defendant] had not admitted them by pleading guilty").

Further, the district court is permitted to draw reasonable inferences from undisputed facts, and we will not disturb those inferences absent clear error. See United States v. Rodamaker, 56 F.3d 898, 902 (8th Cir. 1995). Rivero takes issue with the district court's finding that Rivero and Redwine "worked together to purchase firearms . . . [a]nd then these firearms end[ed] up in the hands of very, very dangerous people," either through Redwine's "intent" or "willful blindness." But this inference is supported by the record. Indeed, a large gap in Redwine's Iowa firearms permit coincided with when he and Rivero began dating, when she acquired her permit, and when her firearms purchases began. The couple engaged in behavior consistent with straw purchasing, such as buying multiple versions of identical firearms. And a plethora of the firearms Rivero and Redwine purchased ended up in the hands of prohibited persons. We thus cannot say that the district court's inference was clearly erroneous in light of the entire record.

C.

Finally, we address Rivero's argument that she was entitled to a reduction in offense level for acceptance of responsibility. USSG § 3E1.1(a) places the burden on the defendant to "clearly demonstrate[]" her acceptance of responsibility for her offense. "A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation." United States v. Spurlock, 495 F.3d 1011, 1014 (8th Cir. 2007). "In determining whether a defendant qualifies for an acceptance of responsibility reduction, the district court may consider aspects of the defendant's conduct beyond the mere fact of h[er] guilty plea." United States v. Long Soldier, 431 F.3d 1120, 1123 (8th Cir. 2005). Among the factors a district court may properly consider is whether the defendant "truthfully admit[ed] the conduct comprising the offense(s) of conviction" and whether the defendant "falsely

den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." United States v. Kiel, 454 F.3d 819, 824 (8th Cir. 2006) (citation omitted); see also United States v. Bell, 411 F.3d 960, 963 (8th Cir. 2005) ("[A] defendant who falsely denies or frivolously contests h[er] relevant conduct has not accepted responsibility."). The district court may also take into account the defendant's minimization of her offense conduct. United States v. Fischer, 551 F.3d 751, 755 (8th Cir. 2008).

In her brief, Rivero argues that she clearly demonstrated acceptance of responsibility because she pled guilty, assisted law enforcement in its investigation, "ceased her involvement with firearms in 2018," and "truthfully admitted the facts of the offense and additional relevant conduct."

However, the record suggests otherwise. For example, the district court found Rivero's contention that she ceased her involvement with firearms in 2018 incredible, stating, "I don't believe there's an AR-15 in her couch and a loaded handgun in her couch [in September 2020] and she doesn't know they're in her home." R. Doc. 140, at 19-20. Further, the district court found that Rivero had consistently denied relevant conduct and sought to minimize her involvement in the offense as much as possible. See, e.g., R. Doc. 140, at 13 ("[T]o come in and say this was just a mere clerical error, I put an address on [the ATF Form] because it was on my driver's license, that—frankly, it's insulting."); R. Doc. 140, at 15 ("What has been frustrating, I think, . . . is this idea that, 'My only crime was a paperwork crime.'"); R. Doc. 140, at 16 ("[S]he has objected to nearly every paragraph of the [PSR] that relates to offense conduct. She's disputed every adjustment that is reasonably drawn from those same facts."); R. Doc. 140, at 21 ("I don't think the defendant has shown by a preponderance of the evidence her entitlement to acceptance of responsibility. . . . I do think she's disputing material facts.") Given the record as a whole, we cannot say that the district court's denial of acceptance of responsibility was "without foundation." Spurlock, 495 F.3d at 1014.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____