09-4955-cr
USA v. Douglas

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: October 26, 2010          Decided:  November 23, 2010)

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

THOMAS DOUGLAS IV,

*Defendant-Appellant.*

Docket No. 09-4955-cr

_____

B e f o r e : MINER, KATZMANN, HALL, *Circuit Judges*.

_____

Defendant-Appellant appeals from a judgment of conviction, entered on November 24, 2009 in the United States District Court for the District of Vermont (Sessions, *C.J.*), following a jury trial, of one count of attempting to entice a minor to engage in illegal sexual activity and one count of knowingly transporting an image of child pornography in interstate commerce.  For the reasons stated below and in the accompanying summary order, the judgment of the district court is **AFFIRMED**.

_____

| | |
|---|---|
| Counsel for Appellee: | TIMOTHY C. DOHERTY, JR., Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Tristram J. Coffin, United States Attorney for the District of Vermont, Burlington, Vt. |
| Counsel for Defendant-Appellant: | ROBIN C. SMITH, Law Office of Robin C. Smith, Esq., P.C., Brooklyn, N.Y. |

_____

PER CURIAM:

Defendant-Appellant Thomas Douglas IV appeals from a judgment of conviction, entered on November 24, 2009 in the United States District Court for the District of Vermont (Sessions, *C.J.*), following a jury trial, of one count of attempting to entice a minor to engage in illegal sexual activity and one count of knowingly transporting an image of child pornography in interstate commerce. This appeal presents the question whether the district court erred in concluding that a defendant may commit criminal enticement pursuant to 18 U.S.C. § 2422(b) by communicating with an adult guardian of a minor.[1] As set forth below, we hold that it did not. For the reasons stated herein and in the accompanying summary order, the judgment of the district court is **AFFIRMED**.

The facts of this case are largely undisputed. The evidence at trial showed that on May 7, 2007, Detective Andy Chaulk of the South Burlington, Vermont Police Department entered an online "fetish" chat room using an undercover profile. He presented himself as "Liz," a 38-year-

---

[1] In an accompanying summary order, we address and reject Douglas's arguments that (1) his counsel below was ineffective because he failed to strike two jurors; (2) the district court abused its discretion in admitting certain evidence of his past similar acts; and (3) he did not take the "substantial step" necessary to commit attempted enticement.

old nurse and divorced mother of a 13-year-old girl, "Anna," and a 3-year-old son. Chaulk noticed that a user in the chat room had the Yahoo screen name "ilikeyounggirls6up." He checked the profile of this user and saw a photo of an older man's thighs, torso, and genitals. The user described himself as "Thomas," aged sixty, from Alabama, with an occupation of "sexslavetrainer." The "hobbies" field on the profile stated, "I train young girls as sex slaves this is for real i don't need bullshiters contacting me only those that is for real and mean business."

Detective Chaulk, as "Liz," sent "Thomas" (who proved to be defendant Douglas) the message, "hey." After some innocuous preliminaries (*e.g.*, "How's it going?"), Douglas asked Liz, "[y]ou have someone you want trained?" Gov. App'x 241. Liz professed to be nervous and asked, "How do you train?" *Id.* at 242. Douglas replied, "Any way it takes. Spanking, tying up and such." *Id.* Liz informed Douglas that she lived in Vermont and had a thirteen-year-old daughter. She related that she was feeling guilty about the decision to "train" her. Douglas reassured her, "We would take it slow. And not hurt her any if it can be avoided. But you would have to bring her to Alabama because I don't charge for this at all." *Id.* at 243. Liz asked, "Have you done this sort of thing before?" *Id.* Douglas replied, "Yes, I have [a]nd to some a lot younger. . . . But I don't keep any pic [*sic*] because of the law." *Id.* at 244. When Liz asked, "What did you do," Douglas indicated in crude terms that he had engaged in vaginal, anal, and oral sex with them. Douglas subsequently asked, "So can you bring her to me here?" *Id.* at 245. After the two discussed where in Alabama Douglas was located, Douglas stated, "If you bring her, I will try to help with the expenses." *Id.* at 246.

Douglas then sent Liz an image of himself from his webcam. Liz sent Douglas a photograph of "Anna," who was really an undercover agent dressed to look like at 13-year-old

-3-

girl. He responded, "She looks beautiful." *Id.* at 267. During some further chatting, Douglas told Liz that he thought they might hit it off and become a family. He reiterated his offer to help pay for the trip and stated that he expected to receive $500 on the sixteenth of May.

The following day, May 8, 2007, when Detective Chaulk logged into Yahoo as "Liz," Douglas immediately sent a message. He told Liz that he was sure they would "hit it off just great" and speculated about having sex with both Liz and her daughter. Liz, however, explained that she was not sure she could get to Alabama because she did not have the money to travel. Douglas responded, "If you have enough for gas here, come on. I can get you back if you want to go back." *Id.* at 286. He calculated that South Burlington, Vermont, was 1,000 miles away and that gas for the trip would cost about $200. He advised Liz that there was an advertisement in the local paper for a registered nurse at Florala Health and Rehab, which Detective Chaulk later determined was a real institution in Florala, Alabama. Douglas added that there were numerous hospitals and nursing homes in the area. He later reiterated that he expected to get $500 on the sixteenth of May.

Liz stated again that she was nervous and asked Douglas, "How has it worked in the past . . . [w]ith the other girls?" *Id.* at 292. Douglas explained that "we started out just being nude around each other, then to a little touching and then went the rest of the way." *Id.* at 293. When Liz continued to express her nervousness, Douglas sent her his phone number and an image of himself to assure her that he was "for real." After some further discussion, Liz asked Douglas to tell her about one of the other girls he had trained. He replied, "I met her off here and her . . . dad brought her to me and everything went smooth. He even had sex with her after I got her trained. She was six or seven. Have a pic of him having sex with her." *Id.* at 303-04. He then offered,

-4-

"Can send it to you if you want." *Id.* at 304. Liz agreed, and Douglas sent her a photograph of a man having intercourse with a prepubescent girl. Douglas explained that the man in the photograph was the girl's father, and he assured Liz, "So you see, I don't hurt them any." *Id.* at 310. He expressed his hope that Liz would be able to find the money to come to Alabama, and he promised to provide her a place to live when she arrived.

After a criminal complaint against Douglas was filed in the Middle District of Alabama and then dismissed for lack of venue, a complaint was filed in the District of Vermont. On October 11, 2007, a federal grand jury in Vermont returned a two-count indictment against Douglas charging him with one count of using a facility of interstate commerce to attempt to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b) and one count of knowingly transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1). A superseding indictment asserting essentially the same charges was filed on September 25, 2008. Douglas was convicted, following a jury trial, on both counts. This appeal followed.

Title 18, section 2422(b) of the United States Code provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Douglas argues that he could not commit enticement of a minor under § 2422(b) by communicating with a person he believed to be an adult. He asserts that the plain language of the statute indicates that a person must direct his or her communications to a minor in order to be

considered to have persuaded, induced, enticed, or coerced a minor into unlawful sexual activity or to have attempted to do so. His argument rests on the fact that "the 'minor' is the only identified direct object of the active verbs listed" in § 2422(b). Def. Br. 52. We disagree.

We review *de novo* this question of statutory interpretation. *See, e.g.*, *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 27 (2d Cir. 2010). To obtain a conviction under § 2422(b), the government must show that the defendant "(i) used a facility of interstate commerce; (ii) to knowingly persuade, induce or entice, or to attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature." *United States v. Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006). We have emphasized that "[a] conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion." *Id.* at 202; *see also United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) ("The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself. That is, if a person *persuaded* a minor to engage in sexual conduct (e.g. with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b)." (emphasis in original) (internal footnotes omitted)); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) ("While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.").

Douglas is incorrect that the defendant's speech must be directed to a minor in all cases in order for persuasion, inducement, enticement, or coercion to occur. As we noted in *Brand*, the statute criminalizes obtaining or attempting to obtain a minor's assent to unlawful sexual activity. *See Brand*, 467 F.3d at 202. Such assent might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity. Accordingly, we join our sister circuits in holding that a defendant may commit criminal enticement pursuant to § 2422(b) by communicating with an adult guardian of a minor. *See United States v. Nestor*, 574 F.3d 159, 162 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007); *Murrell*, 368 F.3d at 1286-88.

We agree with the Eleventh Circuit that "the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." *Murrell*, 368 F.3d at 1287; *see also Spurlock*, 495 F.3d at 1014. Potential victims of enticement may be too young to use the Internet or otherwise communicate directly with strangers without their parents' supervision. Criminals who target such children will perforce operate through intermediaries. If we were to agree with Douglas's assumption that the statute sought to protect only those minors who are old enough to sign into a chat room, we would be ignoring Congress' objective of protecting vulnerable children. We conclude that placing a sexual predator's communications with an adult intermediary beyond the reach of the statute would be an illogical result.

Accordingly, the district court did not err in holding that Douglas could commit criminal enticement pursuant to § 2422(b) by communicating with a person he believed to be the adult guardian of a minor. We have considered all of the parties' arguments, and for the reasons stated

herein and in the accompanying summary order, the judgment of the district court is

**AFFIRMED**.