In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1348

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HARRY WILLIAM MCMILLAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:10-cr-40062-JPG-01 — **J. Phil Gilbert**, *Judge*.

ARGUED SEPTEMBER 27, 2013 — DECIDED MARCH 12, 2014

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK, *Circuit Judges*.

WOOD, *Chief Judge*. Harry McMillan was a second-year law student at the Southern Illinois University School of Law when he posted an ad on craigslist entitled "sell me your teenage daughter." The ad went on to solicit sexual acts for pay. He was caught when then-investigator (now Chief) Mike Andrews of the Benton, Illinois, police department spotted the ad while working undercover online. McMillan

was charged with one count of violating 18 U.S.C. § 2422(b), which prohibits (among other things) knowingly persuading or enticing a person under the age of 18 to engage in criminal sexual activity. He was convicted after a three-day jury trial. The court sentenced him to 132 months' imprisonment, five years' supervised release, and a $500 fine. On appeal, McMillan contends that the evidence was insufficient to support his conviction and that the court erred in admitting certain evidence. While we find that the district court erred by failing to evaluate some of the evidence under Federal Rule of Evidence 403, we are satisfied that any error was harmless. We therefore affirm McMillan's conviction.

## I

Chief Andrews is a member of the Illinois Attorney General's Task Force on Internet Crimes Against Children, and of the U.S. Secret Service's Southern Illinois Cyber Crimes Task Force. In that capacity, he was trained how to catch people who attempt to use the internet to exploit minors sexually. When Andrews saw McMillan's ad, he responded in the guise of "Mike," a father with a teenage daughter who was willing to engage in sex. Over the next two days, McMillan and Andrews exchanged a number of emails, in which McMillan explored such topics as price, the possibility of a threesome, the availability of nude pictures, the location for a tryst, and the use of condoms. McMillan's emails showed that he was worried that "Mike" might be a police officer, and at one point he wrote to Mike that "i don't want to go to jail either."

A couple of days into the exchange, "Mike" and McMillan agreed that "Mike," McMillan, and the daughter would meet at a local movie theater. (The role of the daughter was

played by an adult female who works for a state agency.) The meeting took place as planned on September 22, 2010. As soon as Andrews and the "daughter" entered the theater, the "daughter" went to the restroom. Andrews and McMillan spoke to one another, and McMillan asked for nude pictures of the girl that Andrews had promised to bring. Andrews handed McMillan an envelope, and as McMillan was opening it, Andrews arrested him.

In connection with the arrest, Andrews searched McMillan and found two condoms in his front pocket, along with a receipt for them. Later that evening, the police searched McMillan's residence and recovered his laptop computer. The computer revealed that Andrews had also responded to McMillan's initial craigslist posting using a second persona: that of a 14-year-old girl named "Kellie." McMillan questioned Kellie closely about her sexual experience, asking whether she was "real," if she was a virgin, if she would have sex for money, what sexual acts she had performed, whether she had experienced orgasm, and so on. The laptop search also revealed that McMillan had tried to find "Kellie" on Facebook.

At trial, McMillan admitted that he posted the ad that initially attracted Andrews's attention, but he said that he did so in an attempt to locate a child molester whom he could confront. He had been a victim of sexual abuse as a child himself, and he said that he wanted to ask questions pertinent to his own experience. McMillan also presented testimony about communications between himself and someone called "Just Me," supposedly a 20-year-old man. The two had never met in person, but the defense presented evidence that they had tentatively agreed to meet on September 22,

the day of McMillan's arrest. McMillan testified that he purchased the condoms that Andrews found for purposes of his meeting with "Just Me" before he had made the arrangements to meet "Mike" at the theater. The jury was not persuaded: it convicted McMillan, and he has now appealed from that judgment.

## II

McMillan raises several arguments on appeal. First, he contends that he could not, as a matter of law, violate 18 U.S.C. § 2422(b) by having contact only with the adult father of a teenage girl. In his view, the internet contact must be directly between the defendant and the underage person protected by the statute. In addition, he argues that even if communication between two adults falls within the statute, the prosecution here failed to show that he intended to persuade, induce, or entice the minor to engage in the prohibited acts. Finally, he raises two arguments in connection with the admission of the "Kellie" evidence: he asserts that the evidence was not admissible under Federal Rule of Evidence 404(b); and he contends that the admission of this evidence violated his due process right to a fair trial. We take up these points in turn.

## A

Because McMillan's first argument raises a question of statutory interpretation, we begin with the text of section 2422(b):

> (b) Whoever, using the mail or any facility or means of interstate or foreign commerce … knowingly persuades, induces, entices, or coerces any individual who has not attained the

> age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

McMillan argues that this language covers only direct efforts by the perpetrator to persuade, induce, etc., the underage person, and thus that it does not criminalize communication between two adults.

Although this question is new to us, it has been examined by seven of our sister circuits. Six of them have concluded that the statute does extend to adult-to-adult communications that are designed to persuade the minor to commit the forbidden acts. See *United States v. Berk,* 652 F.3d 132 (1st Cir. 2011); *United States v. Douglas,* 626 F.3d 161 (2d Cir. 2010) (per curiam); *United States v. Nestor,* 574 F.3d 159 (3d Cir. 2009); *United States v. Caudill,* 709 F.3d 444 (5th Cir. 2013); *United States v. Spurlock,* 495 F.3d 1011 (8th Cir. 2007); and *United States v. Murrell,* 368 F.3d 1283 (11th Cir. 2004). See also *United States v. Laureys,* 653 F.3d 27 (D.C. Cir. 2011) (per curiam) (not plain error to instruct a jury that adult-to-adult communications are sufficient); *United States v. Brooks,* 60 M.J. 495 (C.A.A.F. 2005) (version of § 2422(b) incorporated in the Uniform Code of Military Justice covers adult-to-adult communications). To say the least, therefore, McMillan faces an uphill battle to convince us to hold otherwise.

In fact, even if all of those cases did not exist, we would not be inclined to read the statute as narrowly as McMillan does. The statute prohibits not only the knowing persuasion (etc.) of the minor, but also attempts to persuade, induce, entice, or coerce the minor into the criminal sexual acts. One

particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate. As the Second Circuit noted in *Douglas,* the essence of the crime is attempting to obtain the minor's assent, which could be done "for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity." 626 F.3d at 164. The Third Circuit took a similar approach in *Nestor.* It reasoned that even if the completed crime would require contact with a minor, the defendant was still guilty of attempt because he "took substantial steps calculated to put him into direct contact with a child so that he could carry out his clear intent to persuade, induce, entice, or coerce the child to engage in sexual activity." 574 F.3d at 162. The Eighth Circuit added that the statute should not "exempt[] sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents." *Spurlock,* 495 F.3d at 1014.

The rationales of these decisions vary slightly, but one can discern three lines of thought. Some courts would permit conviction solely on the basis of an adult's attempt to persuade another adult to allow the defendant to engage in sexual conduct with a minor. See *Caudill, Murrell.* Others find the persuasion element satisfied because the defendant trades on the influence of a parent over a minor child, or because the parent exploits his or her ability to bring the child to a meeting place where the defendant could attempt directly to persuade her. See *Douglas, Nestor.* Finally, some courts require a more direct attempt to use the parent as an intermediary to convey the defendant's message to the child. See *Spurlock, Berk.*

The third of these possibilities strikes us as the narrowest interpretation. Because we think it describes McMillan's conduct well, we have no need to decide now whether either of the broader readings would also be consistent with the statutory language. The essence of this crime is the defendant's effect (or attempted effect) on the child's mind. Nothing in the statute requires the minor to be the direct recipient of the defendant's message, whether it comes in conversation, by telephone, by text, by email, or in some other way. Human intermediaries long predate the digital contacts that are so common in these cases, and they are still an effective way to convey information.

We see nothing in the text of § 2422(b) that undermines this reasoning. McMillan suggests that the syntactical structure of the statute demands an object for the transitive verbs "persuade, entice, coerce, and induce," and that the only possible object must be the minor. But, as we already have explained, the minor can be the object of the defendant's efforts even if a third person functions as an intermediary. In the end, what is important under this statute is the defendant's attempt (using the mails or other instrumentalities of commerce) to persuade the minor. So read, there is nothing unconstitutionally vague about this law, contrary to McMillan's protestations. See *Skilling v. United States*, 130 S. Ct. 2896, 2927–28 (2010). "Ordinary people using common sense," as the Second Circuit put it, will understand that § 2422(b) is violated by attempts to persuade, entice, coerce, or induce a minor to engage in sexual activity. See *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007). Indeed, the fact that McMillan feared that "Mike" was a police officer setting up a sting shows that he was well aware that he was

treading on forbidden ground. We are satisfied that the statute gives adequately clear warning about what it prohibits.

B

Even if the statute permits conviction based on communications such as those between himself and "Mike," McMillan argues that the evidence presented at trial was insufficient to prove that he ultimately intended to persuade a minor to engage in sexual activity or to use an adult as an intermediary. In order to prevail on such a claim, he must refute the possibility that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). McMillan has not cleared that hurdle.

Most of the evidence from the email exchanges between McMillan and Andrews shows McMillan trying to get the "father" to agree to allow his daughter to engage in sexual activity with McMillan. McMillan states his intentions differently from time to time, ranging from a direct "how much to f**k your daughter" to "I'm not looking for anything bad, maybe someone to hang out with." Even if these communications look more like a negotiation with the father, however, there are others on which the jury could have relied. The most damning is when McMillan emails "Maybe she'd like to see a pic of my cock." The jury may have understood this as McMillan's (misguided) effort to entice the girl directly with the picture. On another occasion, McMillan asks "Mike" in an email if there is "[a]ny chance you can let me talk to your daughter directly, maybe she can email me." This, the jury could have thought, was an attempt to get the father to permit McMillan to entice the girl. Finally, there is

an email in which McMillan asks "Mike" "have you talked to her about this yet?" These examples, which we do not intend to be exhaustive, show that the evidence was sufficient to support the jury's verdict.

## C

Finally, we turn to the most troubling part of this case: the district court's decision to admit evidence under Federal Rule of Evidence 404(b) of a simultaneous email exchange that McMillan was having with "Kellie," who was in reality another fictional person portrayed by Andrews. The evidence showed that McMillan exchanged several sexually explicit messages with "Kellie."

We review decisions to admit evidence for abuse of discretion. See *United States v. Knope*, 655 F.3d 647, 657 (7th Cir. 2011). Even if we conclude that the district court erred in admitting or excluding certain evidence, however, we must still ask whether the error was harmless—that is, if it affected the defendant's substantial rights. See FED. R. CRIM. P. 52(a).

Federal Rule of Evidence 404 addresses the subject of character evidence. Subpart (a) of the rule generally prohibits the admission of character evidence "to prove that on a particular occasion the person acted in accordance with the character or trait"—in other words, to show propensity. But subpart (b)(2) operates as an exception to the general rule of exclusion; it offers the following list of permitted uses of the character evidence:

> This evidence may be admissible for another
> purpose, such as proving motive, opportunity,

> intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b)(2).

We have expressed concern over the risk that practically anything can be shoehorned into this list of permitted uses if the district court is not careful. A rule of *de facto* automatic admission would wipe out the general rule prohibiting propensity evidence. See, *e.g., United States v. Miller,* 673 F.3d 688, 696–97 (7th Cir. 2012); *United States v. Hicks,* 635 F.3d 1063, 1069–74 (7th Cir. 2011) (prior convictions not admissible to show intent or absence of mistake); *United States v. Webb,* 548 F.3d 547 (7th Cir. 2008) (holding that evidence was not admissible to show either intent or absence of mistake).

For many years, this court has used a four-part test designed to screen evidence that should be admitted under Rule 404(b) from that which should stay out. Under that test, the government must demonstrate that:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Chambers,* 642 F.3d 588, 594 (7th Cir. 2011). This was the test that the panel followed in *United States v. Gomez,* 712 F.3d 1146 (7th Cir. 2013), but that opinion was va-

cated and the case has since been reheard by the *en banc* court. The parties were invited, for purposes of the reargument, to discuss the question whether we should retain the existing test for Rule 404(b) evidence, or if some other test would be preferable, such as one that asks directly whether the proposed evidence is relevant to a specifically identifiable and disputed non-propensity issue and then leaves the work of balancing prejudice against probative value to Rule 403. See *United States v. Gomez*, No. 12-1104 (7th Cir. June 14, 2013) (order granting rehearing *en banc* and requesting new briefs).

If we thought it would make any difference to the outcome of this appeal, we would await the *en banc* court's opinion in *Gomez*. But in our view McMillan cannot prevail under any conceivable test that might apply to Rule 404(b) evidence. We therefore analyze his arguments under the traditional test and explain why the more focused approach suggested by the briefing order in *Gomez* would not help him.

McMillan argues that the "Kellie" evidence violated the first and fourth parts of the traditional test—in other words, it was relevant only to propensity (he says), and its prejudicial effect outweighed its probative value in any event. The latter point, which is captured in the fourth part of the traditional test, essentially repeats the independent requirements of Federal Rule of Evidence 403.

The record, however, does not support McMillan's points. It shows instead that the "Kellie" evidence was directly relevant to issues that McMillan put before the jury. In his opening argument, McMillan's trial counsel stated that "Harry will tell you why he placed the ad. And ladies and gentlemen, why he placed the ad is what this case is all

about." Counsel continued, "Harry will tell you in his own words that he did this with the intent that he might have the opportunity to confront someone who would facilitate a sex crime against a minor in order to get his questions answered." McMillan's reason for undertaking this project, counsel said, was to gain a better understanding of child molestation, because McMillan himself had been molested when he was young. Counsel later reiterated that "Harry was also role-playing while he engaged in conversations with Officer Andrews."

The "Kellie" emails directly address McMillan's reason for placing the craigslist ad. McMillan said he did it to catch a molester, but the "Kellie" emails cannot be explained that way. In them, McMillan thought that he was dealing directly with a minor, and his intent to arrange a sexual encounter is unmistakable. This was a far cry from propensity evidence; it was evidence of a course of action in which McMillan was engaged at precisely the same time as his emails with "Mike." Looking at the *Gomez* briefing order, one could say that the element the government was trying to prove was intent, and that the "Kellie" emails were relevant to that issue under the standards set forth in Federal Rule of Evidence 401.

That takes us to Rule 403 (or part four of the traditional test), which permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice … ." Whether that concept appears as the fourth element of the test for Rule 404(b) evidence, or it stands on its own, makes little difference for McMillan. Either way, the district court should make the assessment that Rule 403 calls for. In this case, unfortunately, the district

court did not formally do so. We have urged district courts to make their findings explicit, especially when evidence is as sensitive as the "Kellie" emails are. See *United States v. Ciesiolka*, 614 F.3d 347, 357–58 (7th Cir. 2010). Nonetheless, accepting for the sake of argument that the district court erred here by skipping over that step too quickly, we must still consider whether any such error was harmless.

Given the limited number of "Kellie" emails that the government used and the directness of their relevance, we cannot say that it is clear that the district court would have opted for exclusion had it looked more carefully at Rule 403. Indeed, our prediction is the opposite: the "Kellie" emails refuted McMillan's proffered justification for his actions, and so even though they are prejudicial, the balance tips decisively for admission. The government did not get carried away with this evidence, as it has done in some other cases, see, *e.g., United States v. Loughry*, 660 F.3d 965 (7th Cir. 2011). In fact, the "Kellie" evidence was significantly more limited than the email exchanges in *Knope*, which upheld the admission of evidence about seven additional minors. In short, although the district court should have weighed the probative value of the "Kellie" evidence against its prejudicial effect, its failure to do so in the circumstances of this case was harmless. These considerations also assure us that the admission of the "Kellie" evidence did not violate McMillan's due process right to a fair trial.

### III

McMillan also complains that the prosecutor's references to the "Kellie" emails in closing argument violated his right to a fair trial. For the reasons we have already given, we reject that argument, as well as his understanding of § 2422(b),

his attack on the sufficiency of the evidence, and his other arguments about the "Kellie" evidence.

The judgment of the district court is AFFIRMED.