

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

        **Respondent,**

v.

CHRISTOPHER D. CRAIG,

        **Appellant.**

WD78685

OPINION FILED:

May 10, 2016

---

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable James Walter Van Amburg, Judge**

**Before Division Three:**
**Gary D. Witt, P.J., James Edward Welsh, and Anthony Rex Gabbert, JJ.**

Christopher D. Craig appeals the circuit court's judgment convicting him of attempted enticement of a child and attempted statutory rape in the first degree after a bench trial. Craig contends that, because he never took a substantial step to communicate with an actual child or a law enforcement officer masquerading as a child, the circuit court erred in finding him guilty beyond a reasonable doubt of attempted enticement of a child and attempted statutory rape in the first degree. We affirm the circuit court's judgment.

Viewing the evidence in the light most favorable to the verdict, the evidence established that Detective Mark Stephens of the Platte County Sheriff's Department placed an advertisement

on a website called "motherless.com." According to Stephens, the website is a type of blog that included conversations about deviate sexual topics, such as incest, and is a website known to be visited by child predators. In the advertisement, Stephens used an undercover identity of "Amy and daughter" and said that the 13-year-old daughter was "a handful."

Craig responded to the advertisement and asked "Amy" if she wanted to talk further. Stephens, posing as Amy, asked Craig to contact him via text message through a Google Voice account that he had set up previously.[1] Through this account, on April 25, 2013, Craig texted Amy and asked, "What are your rules? What are you looking for in a man? And how do I know your [sic] not a cop?" Amy responded:

> Im not interested in looks job or anything else I dont care. Im looking for someone to teach my daughter not some kid. The rules are I need to be present in the room at all times, i will not be involved and protection must be used. Im not a cop why would a fucking cop be doing this anyway if your not intrested please dont waste my time thats all I ask thank you[.][2]

On April 27, 2013, Craig sent Amy a message asking, "I assume you found someone else to help you?" On May 3, 2013, Craig sent Amy another message asking, "Are you still looking for someone to help with your daughter?" Amy replied by asking Craig if he was interested and stating that it had to be by her rules. She told Craig that she would be out of town until the following Monday and wanted to discuss it more on that day. Craig replied that he was interested and that he would abide by her rules. On May 6, 2013, Craig texted Amy asking, "So when do you want to discuss details for me helping you out with your girl?" On May 10, 2013, he asked, "Do you want to just pick a day to do this[?] Like how does your Sunday look?" Amy responded by telling him that things had not been going well and that she would let him know if

---

[1]In recounting the numerous text messages that were sent, we will refer to Detective Stephens as "Amy."

[2]All grammatical errors, misspellings, and lack of punctuation appear in the original.

another time worked. Craig sent Amy additional messages on June 24, June 27, and July 3, 2013, checking in with her to see if things were okay and wishing her luck.

On July 12, 2013, Craig texted Amy and asked, "Is this still a possibility? Or is it not [sic] longer a go?" Amy replied, "Sorry my stupid phone is horrible. She has just had a birthday so she's 13 now[. I]s that still acceptable[? S]he still has had no training." Craig replied, "That is fine," and asked "how full of training are you looking for?" He also asked if this training was a surprise for her daughter and if Amy had talked to her daughter about it. Amy told Craig that she had discussed it with her daughter and that she was "fine" with it. Amy further told Craig that she needed to know what Craig felt comfortable teaching her. Craig responded, "The full lesson would be how to please a man properly and would involve all three orifices." Amy said that she preferred that protection be used, and Craig said, "Yes always protection." Craig and Amy then proceeded to discuss when and where the training would take place. Amy told Craig that they would make arrangements the following week.

On July 18, 2013, Craig texted Amy asking if she was in town for the week. Amy responded that she was in town and asked him if "next Monday" would work for him. Craig said that date was fine. He asked Amy "what made you think or want to do this?" Amy responded that she thought some experience would be good for her daughter and that "she may only be 13 but all her friends [are] experimenting and I prefer her to know about it under my control." Craig replied, "Well as long as both are cool with it, I am down." He asked Amy whether she wanted this "to be a full learning experience," "including how to be safe as possible?" Amy told Craig that she wanted to let her daughter know what she could expect to learn from him. Craig offered to send Amy a list of what he would try to teach her daughter. Amy replied, "Yes, if you can give me some sort of list so I can go over it with her so that she can learn easily." Amy also said,

3

"Just understand she's 13 and this will be her first experience." Craig replied, "I understand her age. I will be kind and go easy." Amy then gave Craig an e-mail address where he could send his list. Amy told him that "Amy" was not her real name and that he should call her daughter "Lisa." Craig replied that Amy could call him "John." Amy also told him that they would plan on meeting on "next Monday sometime" and that she would get a room at a hotel near Kansas City International Airport

Later that same day, Craig, using the name John Shane, sent Amy an e-mail that contained a graphic 15-point plan of what he intended to teach Lisa that included instruction on arousing a man, oral sex, sexual intercourse, anal intercourse, and using protection. After Craig sent the e-mail, he confirmed with Amy that she got it. Amy told him that she would text him Monday with details of their meeting place. Craig asked her to e-mail him back with "any additions, questions or things you would like to remove from my list." Amy said that she would "look it over and send any questions this weekend."

On Monday, Craig asked Amy how the list looked, and Amy responded, "I think it's fine. I don't have any probs with it." Amy told Craig that she "made a reservation at the extended stay by the airport." Craig expressed a desire to meet in the parking lot and wanted Lisa present when they first met. Amy said that Lisa "seems excited about this." Craig responded, "Good, I hope to make it very enjoyable." Amy said that she would check-in at the hotel around 4:00 P.M. Craig told her that he worked until 5:00 P.M. and that he would be driving "a newer blue Chevy."

Detective Stephens reserved a room at the hotel in the name of his undercover identity. He also set up surveillance teams at the hotel. After Craig texted Amy that he was two minutes away from the hotel, Detective Stephens saw a blue Chevrolet pull into the hotel parking lot a short time later.

4

A female undercover officer posing as Amy met Craig at the rear door of the hotel. The two went inside the hotel and had a conversation in the hallway. Craig identified himself as "John" and called the undercover officer "Amy." The undercover officer told Craig that her daughter was upstairs taking a shower. She said that her daughter was a little concerned about the anal sex. She told Craig that her daughter "was up for it," but may be a little scared and suggested that they just "see how things went." Craig stated that was okay. The undercover officer asked Craig if it was okay to hold off on the anal sex at first and then maybe work up to it, and Craig responded that he did not mind at all and that it was fine.

Detective Stephens and the surveillance team then entered the hotel and took Craig into custody. Rubber gloves, condoms, and lubricants were found in Craig's car. After being given his *Miranda*[3] warnings, Craig admitted that he was the person who had communicated with Amy, that he had sent the list regarding the training, and that he agreed to meet Amy at the hotel. Craig said that he knew what his intentions were and admitted that he brought the items found in his car "just in case." He acknowledged that the detective was correct in assuming that something sexual would have happened if Amy and Lisa would have been okay with it.

Craig did not testify or present any evidence at trial. After taking the case under advisement, the circuit court found Craig guilty of attempted enticement of a child and attempted statutory rape. The circuit court sentenced Craig to concurrent sentences of ten years' imprisonment on each count. Craig appeals.

Craig presents an issue of first impression in Missouri. He contends that his convictions for attempted enticement of a child required a communication between himself and an actual child less than 15 years of age or a law enforcement officer masquerading as a child less than 15

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

years of age.  The issue in this case, therefore, is whether a defendant, who does not directly

contact a child or a law enforcement officer masquerading as a child, but instead uses an adult

intermediary to attempt to persuade, solicit, coax, entice, or lure a child to engage in sexual

conduct, is guilty of attempted enticement of a child.

Section 566.151, RSMo Cum. Supp. 2013, provides:

> 1.  A person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

> 2.  It is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor.

The enticement statute is also subject to the general attempt statute.  *State v. Faruqi*, 344 S.W.3d

193, 202 (Mo. banc 2011).  That statute provides:

> 1.  A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense.  A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

> 2.  It is no defense to a prosecution under this section that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be.

§ 564.011, RSMo 2000.

A defendant, therefore, attempts to commit a crime when he demonstrates that his intent

was to commit the crime and takes a substantial step toward doing so.  *Faruqi*, 344 S.W.3d at

202.  Thus, for attempted enticement of a child, a fact-finder need only find that defendant took a

substantial step to persuade, solicit, coax, entice, or lure any person who is less than 15 years old

for the purpose of engaging in sexual conduct."  *State v. Davies*, 330 S.W.3d 775, 787 (Mo. App.

2010).  The State need not show that Craig took a "substantial step" to actually engage in sexual conduct, but only that he took a "substantial step" toward persuading, soliciting, coaxing, enticing, or luring a child for the purpose of engaging in sexual conduct with her.  *State v. Fleis*, 319 S.W.3d 504, 509 (Mo. App. 2010).  Because we look at a defendant's subjective intent, the lack of an actual minor or actual parent is not a defense to a charge of attempting to persuade, solicit, coax, entice, or lure a child for the purpose of engaging in sexual conduct with her.  *See U.S. v. Nestor*, 574 F.3d 159, 161 (3rd Cir. 2009).

The evidence recounted above clearly establishes that it was Craig's purpose to commit the crime of enticement of a child.  The numerous text messages with Detective Stephens posing as "Amy" show that Craig was determined to meet and have sex with a child and that he knew that the child with whom he desired to have sex with was 13 years old.  He expressed an intent in several communications to have sex with a 13 year old child and described some of the specific sex acts that he wanted to engage in with her.  His purpose was further evidenced by the fact that he arrived for the meeting in possession of rubber gloves, condoms, and lubricants after stating that he would use those items while performing sexual acts on the child.  Craig also admitted to police detectives that a sex act most likely would have happened had he met with the child.

Further, the evidence established that Craig took a substantial step toward the commission of the offense by texting Amy and discussing having a sexual encounter with a child, by emailing his 15-point training plan for teaching the child about sex, and by arranging to meet for the purpose of engaging in sexual contact with the child.  While not required to support a conviction for attempted enticement of a child, Craig took his communications a step further by driving to the arranged meeting place to meet with a child that he thought was 13 years old.  *Fleis*, 319 S.W.3d at 510.  This evidence most certainly establishes that Craig took a substantial

7

step toward persuading, soliciting, coaxing, enticing, or luring a child for the purpose of engaging in sexual conduct with her.

That Craig did not have direct contact with a child or someone posing as a child is of no concern because Craig was convicted of a crime of attempt.[4] He took substantial steps calculated to put himself into direct contact with a child so that he could carry out his clear intent to persuade, solicit, coax, entice, or lure a child to engage in sexual conduct. Thus, although he never communicated directly with a child or someone posing as a child, he took substantial steps that he believed would allow him to do so.

Craig argues that this court in *Davies* held that, for the crime of attempted enticement of a child, the State has to establish beyond a reasonable doubt that the defendant "communicated with someone he believed to be under the age of fifteen years old[.]" *Davies*, 330 S.W.3d at 787. In that case, the *Davies* court acknowledged that it was dealing with a crime of attempted enticement because there was no child involved, but only "a decoy," who was an intern with the police department. *Id*. at 789. Although we acknowledge that the *Davies* court did indeed list direct communication as an element the State had to establish for the crime of attempted enticement of a child, we believe that the court was stating what the State had to prove in that particular case where the defendant communicated directly with a police intern posing as a child.

---

[4]Craig contends that Missouri's statute is unique because it explicitly states that "[i]t is not an affirmative defense to a prosecution for a violation of this section that the other person was a peace officer masquerading as a minor." He asserts, that because the Missouri legislature chose to specifically bar an officer masquerading as a child as an affirmative defense, it left open the possibility that one could raise the defense that no communication with a purported child ever took place when the attempted enticement of a child occurred via an officer masquerading as a parent of a child. While the General Assembly most certainly could have also stated that it was not an affirmative defense under such circumstances, it does not mean that its failure to do so makes it an affirmative defense.

8

The *Davies* court was not pronouncing all the acts that would constitute attempted enticement of a child; it merely was pronouncing that, "when a person is caught enticing someone he or she believes is a child but who happens to be a police officer or other person masquerading as a child, he is guilty of attempted enticement of a child." *Id*. at 785. The court most certainly was not faced with the facts in this case where the defendant communicated with an adult intermediary.

As noted above, we are not troubled by the fact that Craig did not have direct communications with a child or an officer posing as a child because Craig was convicted of a crime of attempt. The evidence established that he took substantial steps to put himself into direct contact with a child who he believed to be 13 years old so that he could carry out his clear intent to persuade, solicit, coax, entice, or lure a child to engage in sexual conduct.

Although no reported Missouri decisions address the factual scenario presented here, courts in several other jurisdictions have rejected Craig's argument that his convictions for attempted enticement of a child required a communication between himself and an actual child less than 15 years of age or a law enforcement officer masquerading as a child less than 15 years of age. At least nine circuits of the United States Court of Appeals have found that a solicitation to a person believed to be the parent or an adult intermediary of a minor is sufficient to support a conviction under the federal enticement statute. *See U.S. v. Roman*, 795 F.3d 511, 516 (6th Cir. 2015); *U.S. v. Hite*, 769 F.3d 1154, 1160-62 (D.C. Cir. 2014); *U.S. v. McMillan*, 744 F.3d 1033, 1035-36 (7th Cir. 2014); *U.S. v. Caudill*, 709 F.3d 444, 446-47 (5th Cir. 2013); *U.S. v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011); *U.S. v. Douglas*, 626 F.3d 161, 164 (2nd Cir. 2010); *U.S. v. Lee*,

9

603 F.3d 904, 912-13 (11th Cir. 2010); *U.S. v. Nestor*, 574 F.3d 159, 161-62 (3rd Cir. 2009); *U.S. v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007).[5]  The federal enticement statute provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of eighteen years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b).  The Federal appellate courts have found that the terms used in the federal statute cover a defendant's communications with an intermediary made for the purpose of persuading, inducing, enticing, or coercing a minor child to engage in sexual activity.

Indeed, in *United States v. Spurlock*, the Eighth Circuit Court of Appeals found that a defendant took substantial steps to entice minor girls to have sex with him by having conversations in an internet chat room with an undercover agent pretending to be the girls' mother about his desire to perform sexual acts on the girls.  495 F.3d at 1014.  The court found that the conversations bore the "hallmarks of criminal attempt" and "went beyond mere preparation."  *Id*.  According to the *Spurlock* court, the conversations "were necessary to the consummation of the crime" and corroborated the defendant's criminal intent to entice the girls.  *Id*.  The court concluded that "'the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective.'"  *Id*.  Although no actual minor was involved in the case, the court stated, "We do not

---

[5]*See also* these state court decisions finding that communications with an intermediary will suffice to support a conviction for attempted enticement or solicitation of a child:  *Pavlovich v. State*, 6 N.E.3d 969 (Ind. Ct. App. 2014); *State v. Wilson*, 128 So.3d 946 (Fla. Dist. Ct. App. 2013); *and People v. Douglas*, 296 P.3d 234 (Colo. Ct. App. 2012).

believe the statute exempts sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents." *Id.*

We believe the same rationale is applicable to Missouri's child enticement statute. We find nothing in section 566.151 that requires the minor to be the direct recipient of the defendant's message. *Hite*, 769 F.3d 1162; *McMillan*, 744 F.3d at 1036. Whether Craig intended to persuade, solicit, coax, entice, or lure a child to engage in sexual conduct when he met the child at the hotel or whether he intended for an adult intermediary to persuade, solicit, coax, entice, or lure the child to engage in sexual conduct with him before he actually appeared at the hotel, Craig's conduct violated section 566.151. *Caudill*, 709 F.3d at 446. He used electronic communication in an attempt to arrange direct contact so that he could persuade, solicit, coax, entice, or lure a minor child to engage in sexual intercourse or he used electronic communication in an attempt to have an adult intermediary persuade, solicit, coax, entice, or lure the minor to have sexual relations with Craig. *Id.* Allowing a defendant to circumvent section 566.151 simply by employing an intermediary to carry out his intended objective would be inconsistent with the purpose and policy of the statute to protect children from sex offenders and would eviscerate the statute's effectiveness.

Craig also contends that he cannot be found guilty of attempted statutory rape in the first degree because he did not communicate with any minor or law enforcement officer masquerading as a minor. "A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." § 566.032, RSMo Cum. Supp. 2013). As is the case with the enticement statute, the statutory rape statute is subject to the general attempt statute. *State v. Smith*, 330 S.W.3d 548, 555 (Mo. App. 2010). "Attempted statutory rape in the first degree occurs where a subject, with the purpose of

committing the offense, takes a substantial step towards having 'sexual intercourse with another person who is less than fourteen years old.'" *Id*. It is no defense that the attempted offense was factually or legally impossible of commission if the offense could have been committed had the attendant circumstances been as the defendant believed them to be. *Id*.; § 564.011.2.

The crime of attempted statutory rape in the first degree does not require a communication between the defendant and a child or a law enforcement officer masquerading as a child. The text message exchanges between Craig and Amy show that Craig believed that Amy's daughter was 13 years old. Craig proceeded to make arrangements to have sexual intercourse with the child and drove to a hotel, bringing with him lubricants and condoms, for a prearranged meeting to engage in sexual activity with the child. These actions constituted substantial steps towards Craig having sexual intercourse with a person he believed to be under the age of 14.

We, therefore, affirm the circuit court's judgment convicting Craig of attempted enticement of a child and attempted statutory rape in the first degree.

/s/JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

12