NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0615n.06

Case No. 19-1140

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JASON HARRY BISHOP, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Ours is a nation of second chances, sometimes third and fourth chances too. But Jason Bishop's conviction for transporting child pornography marks his fifth for child predation. In view of Bishop's criminal history, the district court gave him a five-level sentence enhancement for his "pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). Bishop argues that his prior convictions—which included soliciting minors for sex—should not count as "abuse or exploitation." Unwilling to accept that interpretation, we affirm.

On January 27, 2017, 50-year-old Jason Bishop crossed the three miles of bridge that separate Sault Ste. Marie, Michigan from Sault Ste. Marie, Ontario. Upon arriving in Canada, he made routine contact with border patrol. Something about this interaction piqued the officers' interest. Hoping to learn more about the nature of his trip, the contents of his vehicle, and his criminal history, they held him for a second inspection. Bishop then provided his phone to an

officer. Browsing his pictures and messages, the officers found an image of sadomasochistic child pornography. They took Bishop into custody.

Things got worse. The officers found in his car "more than 45 sex toys" next to "children's toys," "passes for various amusement parks," and a notebook with the contact information of minors and the information for a page called "hot boys on facebook." R. 15 at 5. Added to that collection were 198 images of child pornography and 330 compromising photos of children found on his phone, laptop, and thumbdrive. They also identified his Dropbox account, which contained 180 folders bearing such labels as "jason h bishop's pedophile collection." *Id.* at 6. During his interview, Bishop did not mince words about his preferred age of sexual partners: thirteen to fourteen. And he was not shy about his reasons for travelling to Canada: the "age of consent was 14," and Canada's "laws against child pornography" were comparatively lax. *Id.* at 5. Canada imprisoned him for thirteen months before returning him to the United States.

Upon Bishop's return, federal prosecutors charged him with transporting child pornography in interstate commerce. *See* 18 U.S.C. §§ 2252A(a)(1), (b)(1); 2256(8)(A). Bishop struck a deal. In exchange for pleading guilty, the government would not oppose his request for a two-level reduction for acceptance of responsibility. The government also agreed to move for a third point of reduction should the court grant his initial request. Bishop knew that his sentence would depend on many factors, including his criminal history, and that the only thing he could count on would be a sentence within the statutory range.

Bishop's presentence report revealed a sordid history of sexual misconduct involving minors. The first (known) trouble occurred in 1994 when Bishop, then age 28, handed notes to eight minors carrying this message: "Hi. My name's Jason. I think you're hot and I want to [perform an obscene act on you]." R. 15 at 11. When all eight reported him to authorities, he was

convicted of two counts of soliciting a minor and five counts of making an indecent proposal to a child. He was then released on parole, only to be caught talking to a fifteen-year-old boy outside the boy's home and offering him a music store gift card. Bishop was sent back to prison, where he wrote letters and mailed pornography to the underage son of the president of a prominent university. That earned a conviction for distributing indecent materials to a minor.

After these sentences ended, new encounters began. He handed a thirteen-year-old boy walking home from middle school this note: "Hey dude, you look hot! I want to [perform an obscene act on you]! My name is Jason Bishop. Come to me at [Bishop's address], or call me on my mother's cell phone at [phone number]. I'll do anything you want, dude! Please contact me A.S.A.P.!" *Id.* at 16. Like the eight teenagers who came before him, the boy turned Bishop in. When officers arrested Bishop, they found an obscene message on him—apparently meant for a teenage boy working at a nearby gas station—professing his love for having sex with teenagers and offering money in exchange for sexual favors. Officers also searched his home and found "more than 200" images of naked children. *Id.* at 17. He was convicted of annoying or molesting a child and of possessing child pornography. While serving that sentence, he had his parole revoked on at least eight occasions. Some of these revocations involved sexual misconduct.

That takes us to Bishop's 2010 conviction, which he received for texting and writing obscene letters to a fourteen-year-old boy. The conversation soon "got dirty," with Bishop asking the boy lewd questions, requesting sexual favors, and encouraging him to "come visit him." *Id.* at 19. Bishop discussed "send[ing] [the boy] a plane ticket" so he could "come and live with him." *Id.* And he persuaded the boy to send him nude photographs. Bishop was convicted of exhibiting harmful material to a minor and child molesting. Back to prison he went. Before his most recent release, authorities revoked his parole four additional times.

The presentence report, prepared after his guilty plea to transporting child pornography, recommended a five-level enhancement for this "pattern of activity involving the sexual abuse or exploitation of [] minor[s]." U.S.S.G. § 2G2.2(b)(5). Bishop objected to the enhancement, insisting that, while some of his past convictions involved soliciting minors for sex, he had not attempted to engage in sexual activity and thus had not engaged in "abuse or exploitation." The district court did not buy it, instead finding that Bishop had committed relevant attempts when he "hand[ed] out [] actual invitations [to consummate sex acts] directly to people, including the minors." R. 29 at 24. It applied the pattern-of-activity enhancement and sentenced Bishop to 240 months—the statutory maximum. The judge added that, even if he had come out the other way on the enhancement, he would have "var[ied] up" to the statutory maximum. R. 29 at 43, 45. Bishop appealed.

Bishop's sole argument is that the district court erred in applying a five-point sentencing enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). We give clear-error review to the court's factual findings and fresh review to its legal rulings. *See United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014).

The appeal turns on the meaning of two phrases in § 2G2.2(b)(5). One phrase, "pattern of activity," means "any combination of two or more separate instances" of abuse or exploitation. *Id.* cmt. n.1. "[S]exual abuse or exploitation," the other phrase, encompasses three sorts of behavior: (a) conduct described in ten federal criminal statutes; (b) state law offenses that would constitute one of these offenses if "the offense had occurred within the special maritime or territorial jurisdiction of the United States"; and (c) an "attempt or conspiracy" to commit any of the offenses covered by the previous subsections. *Id.* In applying these criteria, we look to a defendant's conduct, not to whether he was convicted for it. *Id.*

4

One offense enumerated in § 2G2.2 is especially relevant. Section 2422(b) of Title 18 bars anyone from "attempt[ing]" to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense." An attempt requires the government to prove that (1) "the defendant had the intent to commit criminal solicitation of a minor," and (2) that the defendant "took a substantial step towards committing that crime." *United States v. Roman*, 795 F.3d 511, 517 (6th Cir. 2015). The law reflects a "clear choice" to criminalize "persuasion and the attempt to persuade," not just the "performance of the sexual acts themselves." *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000).

All of this means that, if Bishop had twice before engaged in acts that could have been prosecuted under § 2422(b), the district court properly applied the five-level enhancement. The court easily cleared that hurdle. On at least three separate occasions, Bishop approached minors and handed them notes propositioning them for sex. The court had ample reason to find that these notes conveyed an intent to solicit and that this conduct constituted a "substantial step" towards the commission of the offense, crossing the threshold from "mere preparation" to the "consummation of the crime." *Bailey*, 228 F.3d at 640 (quoting *United States v. Manley*, 632 F.2d 978, 987–88 (2d Cir. 1980)). Remember that Bishop's offenses remained inchoate only because the minors declined his offer. Had they accepted, he could have been charged with the completed offense even if he failed to do anything more. Bishop did his best to persuade minors to have sex with him, and his failure did not owe to an abundance of virtue on his part or a lack of effort. That the teenagers exercised good judgment does not take Bishop off the hook. *See United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003).

This case is easier than others that have found attempts under § 2422(b). In *Roman*, for instance, the defendant communicated with a 34-year-old man (who in truth was an undercover agent), who agreed to facilitate sex with the man's underage daughter (who in truth did not exist). 795 F.3d at 512–14. When the defendant met the agent in person, he was arrested. *Id.* at 514. We affirmed the conviction even though the defendant did not directly contact the minor. *Id.* at 515–19. Our sister circuits have done the same on similar facts. *See, e.g.*, *United States v. Hite*, 769 F.3d 1154, 1166 (D.C. Cir. 2014); *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011); *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010); *United States v. Nestor*, 574 F.3d 159, 161–62 (3d Cir. 2009). By cutting out the middleman, as Bishop did, his conduct was more direct and no less culpable.

Bishop raises two counterarguments. Neither persuades.

He argues that his conduct was too fleeting to count as an attempt. Some of the defendants in some of the cases the district court discussed, it is true, invested more time and energy into their solicitations. *See Roman*, 795 F.3d at 513–14 (describing an extended exchange with the alleged minor's father); *United States v. Blazek*, 431 F.3d 1104, 1106–07 (8th Cir. 2005) (describing a fifteen-month exchange with an undercover agent). But middling solicitations, even brief solicitations, are still solicitations. And by propositioning his victims in person, Bishop came closer to achieving his objective than the perpetrators he tries to distance himself from.

Bishop adds that we have previously distinguished solicitation from attempt, *see United States v. Dolt*, 27 F.3d 235 (6th Cir. 1994), suggesting his solicitation convictions should not count. Not exactly. *Dolt* held that a solicitation to commit drug trafficking did not *necessarily* require that the defendant "himself intend to engage in" the "criminal conduct" enumerated in § 4B1.1 of the Sentencing Guidelines under the categorical approach. *Id.* at 239. But when asking whether

this five-level enhancement applies, we consider the character of Bishop's past conduct, not the label of the offense he was charged with (or, for that matter, whether he was charged with an offense at all). *See* U.S.S.G. § 2G2.2 cmt. n.1. We thus do not have to decide whether *all* solicitations of minors could be charged under § 2422(b). Bishop's could have been, and that's all that matters.

Even if the district court erred in concluding that the enhancement applies to Bishop, any error was harmless. *See United States v. Susany*, 893 F.3d 364, 368 (6th Cir. 2018). The district court noted, twice, that it would have given Bishop the same sentence even if his guidelines range had been lower—even in other words if it had accepted Bishop's argument about the proper interpretation of § 2G2.2(b)(5). In the course of rejecting Bishop's argument for a downward variance, it initially noted that it would "vary up" to 240 months for "the same reasons that . . . there's no basis for var[ying] down." R. 29 at 43. Later, the court noted that, without this enhancement, Bishop would have had a guidelines range of 151 to 188 months. But in view of Bishop's long history of "acting out toward real kids," the court indicated that it would have "var[ied] up" to the statutory maximum of 240 months anyway—an increase of about 28 percent. R. 29 at 44–45. A variance of this magnitude would not be substantively unreasonable on this record. *See Gall v. United States*, 552 U.S. 38, 47 (2007); *United States v. Ruska*, 926 F.3d 309, 313 n.5 (6th Cir. 2019).

We affirm.